601 A.2d 1093

**Michael Jay JOHNSON**

v.

**STATE of Maryland.**

**No. 69, Sept. Term, 1991.**

Court of Appeals of Maryland.

Feb. 21, 1992.

Gary S. Offutt, Asst. Public Defender and Stephen E. Harris, Public Defender, both on brief, Baltimore, for petitioner.

Tarra DeShields–Minnis, Asst. Atty. Gen. and J. Joseph Curran, Jr., Atty. Gen., both on brief, Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge (Retired, Specially Assigned).

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

Let me just tell you ladies and gentlemen a couple of things that bothered me about what my learned friend has said. She said that when you go back there and you come up with a verdict you can't change your minds, make sure, make sure. She wants to elevate reasonable doubt more than it is in your minds. Well, let me tell you ladies and gentlemen, if your verdict is not guilty you can't change it. If it is guilty it is reviewed by the appellate—

So quoth the prosecutor to the jury at the criminal trial of Michael Jay Johnson in the Circuit Court for Prince George's County. The judge had instructed the jury at the close of all the evidence, the prosecutor had made the first phase of his closing argument, and his "learned friend"— defense counsel—had made her closing argument. The prosecutor had the last shot at the jury before it retired to consider its verdict. When the prosecutor declaimed to the jury: "[I]f your verdict is not guilty you can't change it" but "[i]f it is guilty it is reviewed by the appellate—" defense counsel promptly interposed an objection. The judge immediately disposed of the objection with one word, "Overruled." Thus encouraged, the prosecutor continued:

And the rights of the appeal go all the way up to the Supreme Court. So what she is telling you, saying that to you, she is not being quite honest to you. She wants to elevate that reasonable doubt in your mind which is what her job is to make it harder for you all to find him guilty.

The prosecutor concluded his argument after a few brief remarks concerning other matters. The jury retired to deliberate its verdict. It found Johnson guilty of the malicious cutting and assault and battery of one Edward Never-

son.[1]  Johnson appealed from the judgments entered on the convictions and the Court of Special Appeals affirmed them in an unreported opinion.  We granted Johnson's petition for a writ of certiorari.  The petition presented one question:

> Did the trial court commit reversible error when it overruled Petitioner's objection to the prosecutor's argument that a not guilty verdict is irreversible, while a guilty verdict is subject to appellate review?

We accepted that question in the issuance of the writ, but the State translates it into,

> Did the trial court properly exercise its discretion in controlling the scope of the prosecutor's rebuttal closing argument?

The answer to the question presented in the writ is, "Yes." The answer to the question posed by the State is, "No."

## I.

We first observe that the State makes no suggestion that the objection made by defense counsel does not reach the continuing remarks on the subject made by the prosecutor immediately after the overruling of the objection.  The objection interrupted the prosecutor in midsentence, and it was perfectly clear what would follow if the objection were not sustained.  We think that the objection went not only to what was said but also to what was obviously to come.  By

---

1. The indictment returned against Johnson charged him in nine counts with
   1) the attempted murder of Edward Neverson;
   2) the attempted murder of Albert Proctor;
   3) assault with intent to murder Neverson;
   4) assault with intent to murder Proctor;
   5) the malicious cutting of Neverson;
   6) the malicious cutting of Proctor;
   7) assault and battery of Neverson;
   8) assault and battery of Proctor;
   9) carrying a deadly weapon.
   The State *nol prossed* the third and fourth counts.  The jury found Johnson guilty under the fifth and seventh counts.  It returned verdicts of not guilty on the remaining counts.

overruling the objection, the judge demonstrated that he was permitting the prosecutor to continue along the same line. It was apparent that his ruling on further objection would be unfavorable to the defense. Persistent objections would only spotlight for the jury the remarks of the prosecutor. In the circumstances, the absence of a further objection did not constitute a waiver. *See* Md.Rule 4–323(c). And, of course, a motion to strike, in the light of the adverse ruling, would be futile. The issue is properly before us. *See Shoemaker v. State,* 228 Md. 462, 467–468, 180 A.2d 682 (1962).

## II.

■ The challenged harangue of the prosecutor was prompted by remarks of defense counsel at the conclusion of her closing argument to the jury. She observed that it was indeed a burden to judge another human being. But under our system of criminal justice, she pointed out, we are judged by twelve of our peers and rely on their considered judgment. This, she averred, is "unlike anything else that you might do in your daily lives...." She explained:

[I]f you go out here and make such an important transaction today like you sign your name on a contract to buy a home, if you decide tomorrow that I don't really like that house, you can go back as long as you have got a contingency in there, get your deposit back and say, I don't want that. Just like if you purchased a car and you get home and your wife or your husband says, "Take that back, I don't want that," you can exchange it, take it back. Your verdict doesn't work that way because the collective decision that the 12 of you make is final. It is not exchangeable, it is not returnable. You good ladies and gentlemen of the jury make one verdict and decide whether he goes home. I think I made a mistake, it is too late. It is not exchangeable and it is not returnable tomorrow. So I ask you to think very, very carefully.

And I know we are asking a lot of you, but this is the system that we have. It is a good system and it works.

The heart of defense counsel's argument was her assertion that "the collective decision that the 12 of you make is final." It is patent that she was referring to the verdict of the jurors and her statement was correct·as far as the jurors were concerned. Once their verdict was established as unanimous,[2] whether by harkening or polling, *see* Md. Rule 4–327(e), the case was no longer within the province of the jury, and its verdict was final. *Cf. Hoffert v. State,* 319 Md. 377, 572 A.2d 536 (1990). As defense counsel warned, it is then too late for a juror to change his or her verdict on a belated belief that he or she was mistaken in the first instance. Therefore, defense counsel implored the jurors, "think very, very carefully" before reaching a decision. She was doing no more than beseeching the jurors to be sure that they honored the responsibilities they assumed when they were sworn. Upon being selected to try the case, the court clerk requested that the jurors "stand and raise their right hands." The clerk asked:

> [Y]ou do solemnly promise or declare that you shall well and truly try the issue joined between the State of Maryland and Michael J. Johnson, defendant, and a true verdict give according to the evidence?

Each juror responded, "I do." The instructions given by the judge for the jury included guidelines for the performance of the obligations required by the oath. He said, "The verdict that you arrive at in this case must be the *considered* judgment of each and every one of you." (emphasis added). He fully discussed "reasonable doubt." He told the jurors that they

> must decide the case "only after an impartial consideration of the evidence...." He explained that they

---

**2.** The requirement that the verdict of the jury be unanimous was not waived here. *See* Md.Rule 4–327(a) and *State v. McKay,* 280 Md. 558, 375 A.2d 228 (1977).

must consider this case impartially and fairly. You are to perform this duty without bias or prejudice as to any party. You should not be swayed by sympathy, prejudice or public opinion.

The judge pointed out that one of the "major responsibilities" of a juror was to judge the credibility of the witnesses, and he explained the function of a juror in weighing the evidence. The instructions fleshed out the promises the jurors made when sworn, and the remarks of defense counsel were consistent with the oath and in no way in conflict with the instructions. The import of defense counsel's argument was that each juror must "well and truly try the issue" and "a true verdict give according to the evidence." But, she cautioned, the verdict should be given only after the most careful consideration inasmuch as it may not be stricken because a juror, later on, has a change of heart. It was in that light that defense counsel requested the jurors, "to think very, very carefully" before deciding the issue. We think that the remarks of defense counsel were proper.

On the other hand, we think that the remarks of the prosecutor in his final argument were improper. We note that defense counsel's argument was not challenged when made. Instead, the prosecutor utilized his privilege to be the last to have the ear of the jury to rebut her argument. We further note that we do not agree with the prosecutor's twice asserted claim that defense counsel indicated that "[s]he wants to elevate reasonable doubt more than it is in [the jurors'] minds." We do not gather from her remarks that she was suggesting that, contrary to the judge's instructions, the jury apply a higher degree of proof than the reasonable doubt standard in deciding the case. The prosecutor saw specters in defense counsel's argument that were not there. He attempted to defuse her argument by materializing the appeal process. In doing so he erred.

We ascribe no nefarious intention on the part of the prosecutor, but it is the impact of his comments on the jury that is significant, not his intent. We believe a juror may

reasonably conclude from his argument that a not guilty verdict is truly final. If you do not convict Johnson he walks out of the courtroom forever a free man, as far as the offenses here are concerned, because he cannot be twice placed in jeopardy for the offenses on which you found him not guilty. This of course is correct. A verdict of guilty, however, the prosecutor suggested, is not final. He indicated that, although the State cannot appeal from a verdict of not guilty, Johnson has the right of appeal from a guilty verdict, all the way to the Supreme Court of the United States. The message conveyed by the remarks was plain; the possibility exists that a verdict of guilty will be set aside. The implication was that the jurors need not be unduly concerned about convicting Johnson. If the conviction turned out to be improper, it may be wiped out on appeal.

▮ Even if the remarks made by the prosecutor concerning Johnson's rights of appeal are taken as accurate, they, unlike defense counsel's argument, tended to subvert the promises and declarations of the jurors when sworn, and to improperly encourage the jurors to disregard the judge's instructions. One of the most egregious errors counsel can make is to attempt to put the responsibilities of the jurors on some other body. We recognized this in *Shoemaker v. State*, 228 Md. at 468, 180 A.2d 682. We said that the better reasoning and weight of authority are against the propriety of arguments by a prosecutor referring to the right of appeal, the possibility of executive clemency, and parole of a defendant. One reason in support of this view, we observed, "is that arguments should be based upon the evidence...." *Id.* But the principal objection to arguments of this type, we declared, goes deeper. *Id.* at 468–469, 180 A.2d 682. The chief vice of such references is that they suggest "to the jury that it might in part shift its responsibility for a finding of the defendant's guilt to some other body." *Id.* at 469, 180 A.2d 682. *Shoemaker* concerned a reference to the possibility of parole. The Court said that

the natural tendency and effect of the statements about parole was to suggest to members of the jury that they might resolve any question about the defendant's guilt beyond a reasonable doubt with the thought that, even if they made a mistake, no great harm would be done since he might be paroled.

*Id.* The rationale of *Shoemaker* with respect to a reference to parole is equally applicable to the reference to the right of appeal here. In *Doering v. State,* 313 Md. 384, 410, 545 A.2d 1281 (1988), we noted that "the basic rationale of *Shoemaker* [was] entirely correct in its own setting...." *Poole v. State,* 290 Md. 114, 125, 428 A.2d 434 (1981), declared that "we strongly discourage any comments by counsel in their arguments to the jury concerning appellate review [as] they tend to encourage the jury to believe that it can shift part of its responsibility to another body." We said flatly, "We view such arguments as improper." *Id.* The State looks to *Blackwell v. State,* 278 Md. 466, 365 A.2d 545 (1976) *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977) to support its position that the prosecutor's comments here were "nothing more than a reasonable reply to the arguments made by defense counsel." In *Blackwell* we determined that the prosecutor, in rebuttal, was merely responding to the argument of defense counsel. *Id.* 278 Md. at 480, 365 A.2d 545. Here we have determined that the prosecutor's comments were, in fact, not proper rebuttal. In *Blackwell* it was further contended that the prosecutor's remarks prejudicially misstated the juror's oath. We held that even if they were improper, "the possibility of prejudice was cured by the court's instruction." *Id.* at 482, 365 A.2d 545. We believe that the judge's instructions here did not cure the possibility of prejudice. He told the jurors at the beginning of his charge that "[a]nything that the attorneys may say in closing arguments ... are not binding on you because of the fact that you are the sole judge of what the facts are." And later in the instruction he cautioned that closing arguments were "not in any way to be considered as evidence...."

But this was not enough to defang the prosecutor's remarks with respect to Johnson's rights of appeal. In the light of his ruling, the judge, of course, gave no instructions addressed to the challenged remarks of the prosecutor.

■ The State leans heavily on *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974). It is true, as *Wilhelm* asserts, that "[i]n the environment of the trial the trial court is peculiarly in a superior position to judge the effect of any improper remarks." *Id.* at 429, 326 A.2d 707. If the remarks appear to be prejudicial, it is ordinarily within the sound discretion of the trial judge as to what curative action to take. Here, the judge did not exercise his discretion because, as is apparent from his ruling, he found no impropriety in the remarks of the prosecutor, no error in the making of them, and thus, no prejudice. We, however, have determined that the prosecutor's remarks were improper and that he did err in making them. The circumstances called for the judge to exercise his discretion. The failure to exercise discretion when its exercise is called for is an abuse of discretion. The question is how is the effect of the error here, compounded by the judge's abuse of discretion, to be measured.

In *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976) we adopted a test to determine whether an error in criminal causes is harmless or prejudicial. We went beyond constitutional dictates. We saw

> no sound reason for drawing a distinction between the treatment of those errors which are of constitutional dimension and those other evidentiary, or procedural, errors which may have been committed during a trial.

*Id.* at 657, 350 A.2d 665. We concluded:

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the

evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Id.* at 659, 350 A.2d 665.

The State opines that the *Dorsey* test "is meant to apply to those errors affecting an accused's constitutional rights and those other evidentiary, or procedural, errors which may have been committed during a trial." It avers, "The arguments of counsel are not evidence and have no binding force or effect." It urges that there is "the need for differing standards in assessing whether, if error is found, the error is harmless." It looks to *Wilhelm* as providing the different standard for assessing errors arising in arguments of counsel.

In the first place, we do not view *Dorsey* to be as narrow as the State would have it. We think that it is broad enough to encompass the arguments of counsel to the jury as part of the usual and ordinary procedures of a criminal trial, even if the error were not deemed to offend a fair trial guaranteed under due process of law. Furthermore, *Dorsey* aimed at providing one standard to measure an error. We said, 276 Md. at 658, 350 A.2d 665:

Regardless of the generic nature of the error, we believe that upon appellate review, a uniform test should be applied in all criminal cases to determine the effect the error may have had on the verdict.

In any event, a careful analysis of *Wilhelm* and *Dorsey* reveals that the two opinions, both delivered by O'Donnell, J. for the Court, are not contrariant, nor is *Dorsey,* in major part, advenient. The two opinions are consistent in the philosophy prompting them, comparable in the rationale underlying them, and similar in the test set out in them. Both are concerned primarily with error and the prejudice arising therefrom. *Dorsey,* decided after *Wilhelm,* articulates specifically what *Wilhelm,* at the least, implies. In *Wilhelm,* we reviewed numerous cases decided in Maryland, and in other jurisdictions. We finally looked to *People v. Mackins,* 17 Ill.App.3d 24, 308 N.E.2d 92 (1974) and

concluded that it was in accord with our cases. At 272 Md. 430–431, 326 A.2d 707, we quoted *Mackins* 17 Ill.App.3d at 46–47, 308 N.E.2d 92. Included in the quote were these observations:

"[T]he mere occurrence of improper remarks does not by itself constitute reversible error. There must be an additional element for this conclusion to be reached. If we cannot say that the assailed argument constituted 'a material factor in the conviction'; must have resulted in 'substantial prejudice to the accused' or that 'the verdict would have been different had the improper closing argument not been made ... then we must necessarily conclude that no prejudicial error resulted from the argument."

(citations omitted). It is apparent that *Dorsey* sprouted from seeds planted in *Wilhelm*. There is no need to segregate *Wilhelm* from *Dorsey*, and decide the propriety of a prosecutor's argument under *Wilhelm* and other errors under *Dorsey*. As we have seen, we declared in *Dorsey* our belief that "upon appellate review, a uniform test should be applied in all criminal cases to determine the effect the error may have had on the verdict." 276 Md. at 658, 350 A.2d 665. That test is the one adopted in *Dorsey*, and we apply it here.

Under the *Dorsey* test the error in the case at hand was not harmless. Upon our own independent review of the record, we are not

able to declare a belief, beyond a reasonable doubt that the error in no way influenced the verdict.

We are not satisfied, as *Dorsey* requires, that

there is no reasonable possibility that [the error] may have contributed to the rendition of the guilty verdict.

Therefore, *Dorsey* dictates, "such error cannot be deemed 'harmless' and a reversal is mandated." 276 Md. at 659, 350 A.2d 665. We reverse the judgment of the Court of Special Appeals and grant Johnson a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PRINCE GEORGE'S COUNTY.