663 A.2d 583

**Terrence BROWN**

v.

**STATE of Maryland.**

**No. 57, Sept. Term, 1994.**

Court of Appeals of Maryland.

Aug. 22, 1995.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, all on brief), Baltimore, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., all on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

In this case, Terrence Brown, the petitioner, presents three questions for our resolution:

1. Did the trial court's variation of the modified *Allen*[1] charge coerce the jury, which had announced it was hopelessly deadlocked, into returning a guilty verdict?

---

**1.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

> The charge to which the petitioner takes exception was the following:
> All right, [jury foreperson], I received your note, and it reads, "Judge Missouri, we are deadlocked with jurors firmly entrenched on both sides. We do not see any chance of reaching a verdict." I am appreciative of what has happened thus far; however, the case cannot end at this juncture so I have a further instruction that I must give you.
> The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. Your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.
> During deliberations do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict.
> Now, folks, what I am about to say please don't think I have a vested interest, and I had told you this throughout the case, but all parties deserve a verdict in this case, if you can reach that verdict *without violence to your individual judgment. By that is meant if* you can deliberate and intelligently take a look at this case and reach a verdict, then please do so. Any time someone is on trial both the State and the Defendant have a vested interest in resolving the matter.
> So I ask you to go back and continue to deliberate with a view to reaching a verdict in this case. Thank you. Please retire and continue deliberating.

2. Did the trial court err in permitting improper prosecutorial closing argument?

3. Did the trial court err in admitting evidence that, on prior occasions, the alleged victim had exercised "proper firearms discipline"?

We shall reverse the judgment of the Court of Special Appeals, which affirmed the judgment of the Circuit Court for Prince George's County. Contrary to those courts, we are of the opinion that reversible error was committed when the State informed the jury, in its rebuttal closing argument, that it could recommend mercy to the trial court. We do not reach, therefore, the other two issues raised by the petitioner.

I

Ryan Johnson, the victim, was an off-duty Prince George's County police officer. The incident during the course of which he was killed occurred while Johnson was working on his car outside of a friend's home. Although dressed in civilian clothing, and, as indicated, off-duty, Johnson was armed with his service revolver. Petitioner was a passenger in an automobile driven by his co-defendant, Harry Mayo. Mayo drove past Johnson, made a U-turn, and returned to where Johnson was standing. Petitioner got out of the car carrying a handgun in his crotch area and approached Johnson. The two men exchanged words. During the exchange, Johnson pulled out his service revolver and shot the petitioner in the lower abdomen. The petitioner returned fire, mortally wounding Johnson. The petitioner was taken to a District of Columbia hospital, where he underwent surgery.

The petitioner was charged with first degree felony murder, attempted robbery with a deadly weapon and use of a handgun in the commission of a felony or a crime of violence. The State's theory was that the petitioner's purpose in approaching Johnson was robbery. It adduced testimony to that effect from a detective who interviewed the petitioner hours after the surgery and from the petitioner's co-defendant, Mayo. For his part, the petitioner maintained that he approached

Johnson to offer assistance with his disabled vehicle and that he returned Johnson's gunfire only in self-defense.

In its rebuttal closing argument to the jury, the State argued:

[Defense counsel] made it very clear to you what kind of sentence [the appellant] is facing if you find him guilty, and you shouldn't be swayed by that in rendering your verdict because that's for the judge to do. But before all of you, or those of you who are concerned, who are concerned that perhaps the punishment may be too harsh because this young man did lead a good life up until April 16, because perhaps he made that decision because he was foolish, there is something that you can do, and that is, if you find him guilty, as I suggest to you the evidence when you look at it in the totality of the circumstances, when you weigh the credibility of the different individuals, I suggest it does establish that he was trying to rob the officer, no other explanation, and that is supported by the evidence, and you can recommend to the Court that the Court have mercy on the Defendant.

[DEFENSE COUNSEL]: Objection.

THE COURT: That's a matter of law that they can, Maryland law allows it.

Objection overruled.

[PROSECUTOR]: So if you have concerns about what may happen to him after you have done your duty, you may relay that to the Court and ask the Court to have mercy when imposing the sentence.

The petitioner believes that this ruling was error. Consequently, it was one of the issues he raised on his appeal to the Court of Special Appeals, which, he maintained, required reversal of his conviction. The intermediate appellate court, in an unreported opinion, agreed with the petitioner that the ruling was error. It held, however, that the error was harmless. The court reasoned:

The State refrained from suggesting either probation or a suspended sentence as possibilities; and the comment con-

cerning a recommendation of leniency was a correct, albeit incomplete, statement of the law. Appellant has not convinced us that the trial judge's error contributed in any way to the jury's verdict.

We issued a writ of certiorari at the petitioner's request.

## II

### A.

This Court recently addressed Maryland Rule 4–327(f) [2] and concluded that it was not a proper subject of jury instructions. *Chambers v. State*, 337 Md. 44, 47, 650 A.2d 727, 728 (1994).[3] In that case, after the close of all of the evidence, but before the jury had begun deliberations, the petitioner asked the court to instruct the jury as follows:

Members of the Jury, you have found the Defendant guilty. I am going to ask you to return to your jury room and decide whether or not the Court should show mercy to the Defendant in sentencing. When you have reached a deci-

---

**2.** Maryland Rule 4–327(f) provides:

(f) *Recommendation of Mercy.*—A jury may recommend that the court show mercy to a defendant. The recommendation is not part of the verdict and is not binding upon the court.

**3.** The Court was not unanimous in this conclusion. Two judges rejected the view that Rule 4–327(f) "[codifies] only a privilege, rather than a right, of which the jury need not, therefore, be informed." *Chambers v. State*, 337 Md. 44, 59, 650 A.2d 727, 734 (1994) (Concurring Opinion by Bell, J., in which Eldridge, J., joined). The concurring judges believed, instead, that, the Maryland Rules being "precise rubrics ... to be read and followed," *id.* at 58–59, 650 A.2d at 734 (quoting *Goins v. State*, 293 Md. 97, 109, 442 A.2d 550, 556 (1982)), this Court, by promulgating Rule 4–327(f), gave juries the right to recommend mercy, a right without any substance unless the jury is made aware that it has that right. 337 Md. at 59, 650 A.2d at 734. Those judges would have held, therefore, "that a defendant's request that the jury be instructed that if the defendant is found guilty then a recommendation of mercy may be made to the judge," should be honored. *Id.* at 59–60, 650 A.2d at 734–35. They concurred in the result because the instruction the defendant proposed did not accurately state the applicable law in that it failed to address the issue before the Court, anticipated a decision that the jury may or may not have reached, and was potentially misleading. *Id.* at 55, 650 A.2d at 732.

sion, either yes or no, on whether the Court should show mercy upon the Defendant in sentencing please knock on the door, the bailiff will escort you back to your seats and the Clerk will ask the Foreperson for your answer.

*Id.* at 46, 650 A.2d at 728. The trial court refused to give the requested instruction and the petitioner preserved the point. Having been unsuccessful in the Court of Special Appeals, he sought certiorari, which we granted "to consider whether Maryland Rule 4–327(f) requires a trial court, upon request, to instruct the jury that it may recommend that the court show mercy to a criminal defendant." *Id.* at 45, 650 A.2d at 727 (footnote omitted). Answering that question in the negative, the Court held

that juries should not be instructed that they may return a recommendation of mercy. If the jury returns such a recommendation, it is not a part of the verdict, it is not binding on the trial court, and it should receive such weight as the trial judge deems appropriate after consideration of the evidence presented at trial, as well as additional information which may be presented at sentencing. If during the course of deliberation the jury inquires whether they may return a verdict with a recommendation of mercy, leniency, clemency, or the like, the court should respond that they may do so, but that their recommendation is not binding upon the court. Furthermore, they should be advised that it is within the sole discretion of the court to determine the appropriate sentence in the case.

*Id.* at 47, 650 A.2d at 728.

The Court explained its holding in two ways. First, recognizing the interrelationship between Rules 4–325(c) and 4–327(f), it rejected the notion that Rule 4–327(f) is "the applicable law" and thus creates a "right" in the defendant to require that a mercy recommendation instruction be given.[4] *Id.* at 48, 650 A.2d at 728–29. This was so, the Court said because the

---

4. Maryland Rule 4–325(c) requires the jury to be instructed "as to the applicable law" when requested by a party and the matter has not fairly been covered by instructions already given.

only purpose of Rule 4–327(f) was to restate the common law in the form of a rule, *i.e.,* to "recognize the right of a jury to append to its verdict a recommendation of mercy," but not to imbue a defendant with "a 'right' to require an instruction informing them of this prerogative." *Id.* at 49, 650 A.2d at 729. The Court also viewed the giving of a mercy instruction as being "dangerously misguided." *Id.* at 51, 650 A.2d at 730. It opined that "such an instruction has enormous potential to compromise the jurors' evaluation under the reasonable doubt standard, to inject emotion into the deliberative process, and to introduce the consideration of punishment into the guilt or innocence stage." *Id.* at 51, 650 A.2d at 730.

With regard to the former rationale, the court explained that a mercy instruction "might entice the jury to relieve the State of its burden of proof beyond a reasonable doubt; the jury, in an effort to compromise, might instead find a defendant guilty under a lesser standard, under the belief that the court will be merciful in sentencing." *Id.* at 52, 650 A.2d at 730–31. The concurring opinion recognized the same danger: "[B]y being given a recommendation of mercy instruction, the jury acquires knowledge that may induce it, or members of it, to abdicate responsibility to resolve the case on the basis of reasonable doubt in favor of reliance on the trial court to ameliorate that abdication through the exercise of its sentencing prerogative." *Id.* at 58, 650 A.2d at 734 (Bell, J., concurring). The concern about giving a jury instruction with the potential adversely to impact the jury's legitimate and exclusive function has been expressed in our cases. *See Johnson v. State,* 325 Md. 511, 518–19, 601 A.2d 1093, 1096 (1992); *Doering v. State,* 313 Md. 384, 408–09, 545 A.2d 1281, 1293–94 (1988); *Shoemaker v. State,* 228 Md. 462, 469, 180 A.2d 682, 685 (1962); *La Guardia v. State,* 190 Md. 450, 460, 58 A.2d 913, 918 (1948). *See also Tripp v. State,* 36 Md.App. 459, 484, 374 A.2d 384, 398, *cert. denied,* 281 Md. 745 (1977).

The first case to reach this Court which required us to focus on the issue this case presents was *Shoemaker v. State, supra.* Although a capital case, which necessarily presents different considerations because it is the jury that is the sentencing

authority, *see Doering v. State, supra,* 313 Md. at 410, 545 A.2d at 1294 ("We conclude that the basic rationale of *Shoemaker,* entirely correct in its own setting, is not directly applicable to proceedings involving determination of sentence by a jury."), the posture in which the case reached us is extremely informative and instructive on the issue *sub judice.* The issue as presented in that case concerned the prosecutor's reference to the defendant's possibility of parole. Having conveyed to the jury that it was not seeking the death penalty, the prosecutor suggested the "possible release on parole after, or perhaps even before, the defendant, if convicted, should have served one-third of whatever term of imprisonment might be imposed, and the obligation of the Parole Board to consider his eligibility for parole after he had served one-third of the term." *Shoemaker,* 228 Md. at 468, 180 A.2d at 685. While pointing out that one reason for finding the possibility of parole argument to be reversible error was that it was not based upon evidence, the Court was of the view that "[t]he chief vice of the reference in this case to the possibility of parole is that it suggested to the jury that it might in part shift its responsibility for a finding of the defendant's guilt to some other body," *id.* at 469, 180 A.2d at 685; that "the natural tendency and effect of the statements about parole was to suggest to the members of the jury that they might resolve any question about the defendant's guilt beyond a reasonable doubt with the thought that, even if they made a mistake, no great harm would be done since he might soon be paroled." *Id.* at 469, 180 A.2d at 685.

In *Johnson,* in response to the defense counsel's argument urging the jury to be sure of its verdict inasmuch as it would be too late for a juror to change his or her verdict after the jury's verdict had been established as unanimous, the prosecutor, in rebuttal closing argument commented:

Let me just tell you ladies and gentlemen a couple of things that bothered me about what my learned friend has said. She said that when you go back there and come up with a verdict you can't change your minds, make sure, make sure. She wants to elevate reasonable doubt more than it is in

your minds. Well, let me tell you ladies and gentlemen, if your verdict is not guilty you can't change it. If it is guilty it is reviewed by the appellate—

And the rights of the appeal go all the way up to the Supreme Court. So what she is telling you, saying that to you, she is not being quite honest to you. She wants to elevate that reasonable doubt in your mind which is what her job is to make it harder for you all to find him guilty.

325 Md. at 513, 601 A.2d at 1093–94. The defendant's objections to that argument were overruled by the trial judge. This Court held that "[t]he rationale of *Shoemaker* with respect to a reference to parole is equally applicable to the reference to the right of appeal here." *Id.* at 519, 601 A.2d at 1096. *See also Poole v. State,* 290 Md. 114, 125, 428 A.2d 434, 440 (1981), viewing as improper "any comment by counsel in their arguments to the jury concerning appellate review.... [as] they tend to encourage the jury to believe that it can shift part of its responsibility to another body" and *Doering v. State* holding "that where ... the defendant in a capital sentencing proceeding seeks to place before the jury [as a mitigating circumstance] relevant and competent information concerning his eligibility for parole in the event a life sentence is imposed, that request should be granted." 313 Md. at 412, 545 A.2d at 1295.

### B.

In light of *Chambers,* it must be obvious that, notwithstanding that this case involves jury argument while *Chambers* involved a jury instruction, the State's rebuttal closing argument in this case was improper unless it could be characterized as "nothing more than a reasonable reply to the arguments made by defense counsel." That argument was made by the State to the Court of Special Appeals, which rejected it, and it has renewed it before us. The intermediate appellate court expressed an inability "to confirm from the record the State's position that defense counsel alluded to appellant's proposed sentence." Slip op. at 18. We have

conducted an independent review of the record. We too share the conclusion of the Court of Special Appeals.

To be sure, the petitioner's attorney, in closing argument, stressed the petitioner's accomplishments in his young life and commented on "all of the good things about him," including that he was a mentor to other kids, an outstanding student, and an "American dream" with academic and athletic abilities that enabled him to obtain scholarships. It is also true that defense counsel commented upon and recounted the testimony of the numerous character witnesses who testified on the petitioner's behalf. Yes, the petitioner's attorney asked the jury to reflect upon what he had said and reminded it that the petitioner "was supposed to be on a campus now." He also asked the jury to "think about [the petitioner's] future" and "let [the petitioner] know what life will be for him in the future." Those comments were all aimed at a legitimate purpose. Comments about the petitioner's character were directed at urging the jury to find him not guilty of attempted robbery. The petitioner's counsel argued, in short, that a reasonable doubt on that issue was created by the petitioner's character. That too was the purpose for the recounting of the character witnesses' testimony. Those comments relative to the jury reflecting upon the petitioner's future were made in the context of defense counsel's contention that a fair appraisal of the evidence, using common sense, would result in there being reasonable doubt, which, in turn, would result in the petitioner's acquittal and his being able to get on with his life. Of course, it was the petitioner's position that he was not guilty inasmuch as he killed the police in self-defense. Nevertheless, the petitioner's counsel's argument was a legitimate one and, contrary to the State's argument, was in no way intended to cause the jury to feel sympathy toward the petitioner by focusing their attention on the personal effect that a guilty verdict would have on the petitioner.

### C.

Furthermore, viewed in light of the trial court's ruling on the petitioner's objection, as it must be, the prosecutor's

rebuttal closing argument did not constitute an accurate statement of the law. The jury was not told that a recommendation, if made, would not constitute a part of the verdict or be binding on the court, as the rule specifically provides. In that sense, the argument was misleading, the necessary inference being to ascribe a significance to the recommendation that the rule did not contemplate it to have. As the petitioner points out, "[i]f anything, [the argument and the court's ruling] elevated the impact of a recommendation of mercy to a higher level of dignity than is justified by the actual state of the law." Petitioner's brief at 15–16. Nor is the State's argument persuasive that the use of the term "recommendation" is sufficient to convey to the jury that what they communicated to the trial court is non-binding. The rule itself constitutes a clear rebuttal to that argument: it specifically and expressly provides that the jury's recommendation "is not part of the verdict and is not binding upon the court." The inclusion of that sentence recognizes the ambiguity of the rule's first sentence with respect to the effect on the court of a jury recommendation of mercy.

### III

Alternatively, the State embraces the Court of Special Appeals' holding that the trial court's error was harmless beyond a reasonable doubt. It argues that because the record reflects that the jury's verdict was unqualified by any recommendation of mercy or, for that matter, any indication of concern for another possible disposition, the record actually disproves that the rebuttal comments of the prosecutor could have affected the verdict in this case. The State also relies heavily on the trial court's instructions as to how the jury was to evaluate the evidence and the role of arguments of counsel in that evaluation. We do not agree.

The test of harmless error is whether "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Dorsey v. State,* 276 Md.

638, 659, 350 A.2d 665, 678 (1976). We made clear in *Johnson*, that harmless error analysis, as applied in *Dorsey*, applied equally to arguments of counsel to the jury as to evidentiary rulings. 325 Md. at 521, 601 A.2d at 1097–98. Indeed, this Court made clear that *Wilhelm v. State*, 272 Md. 404, 326 A.2d 707 (1974), addressing the limits of argument by counsel to the jury, and *Dorsey* "are consistent in the philosophy prompting them, comparable in the rationale underlying them, and similar in the test set out in them. Both are concerned primarily with error and the prejudice arising therefrom." 325 Md. at 521, 601 A.2d at 1098.

■ The State's rebuttal closing argument interjected into the deliberation process as an acceptable component, the concept of mercy. The jury earlier had been told, in the court's instruction, that it ought not consider emotion or other like factors in reaching its verdict. By overruling the petitioner's objection to the prosecutor's rebuttal closing argument, the court could be viewed as countermanding that instruction and thus permitting the jury to take mercy into account during the deliberations. While the argument focused on the jury's right to make a recommendation to the trial court for sentencing purposes, once mercy has been interjected in the case, its impact cannot be measured adequately. Thus, while it is true that the jury did not make a recommendation that the trial court show mercy to the defendant, it is not at all clear what, if any, role the prosecutor's argument played in the jury's deliberations.

Certainly there is nothing in the record that indicates, one way or another, whether one or more jurors were affected by the argument or that the possibility of a recommendation of mercy was involved in resolving the jury's heretofore deadlocked posture. Nor is there anything in the record to suggest that, notwithstanding its lack of a recommendation that it do so, the jury was not relying on the trial court to show the petitioner mercy. It is just as logical that a court could show mercy without a recommendation as it is that a court would show mercy only with a recommendation. We are

not at all sure that, on this record, the jury did not "in an effort to compromise, ... find [the] defendant guilty under a lesser standard, under the belief that the court will be merciful in sentencing." *Chambers*, 337 Md. at 52, 650 A.2d at 730–31.

In sum, since, on our own independent review of the record, we are unable to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, we hold that the error was not harmless. Accordingly, the petitioner is entitled to a new trial.

*JUDGMENT REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER REMAND TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR A NEW TRIAL. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.*

MURPHY, C.J., concurs in the result.

RODOWSKY, CHASANOW, and RAKER, JJ., dissent.

RODOWSKY, Judge, dissenting.

I respectfully dissent. The jury in this case did not recommend mercy. The Court's opinion is an interesting, but irrelevant, discussion of a problem in the abstract. Because the verdict was unqualified the claimed error is harmless beyond a reasonable doubt.

Judges Chasanow and Raker have authorized me to state that they join in the views expressed herein.