768 A.2d 761

**Michael A. WILLIAMS**

v.

**STATE of Maryland.**

**No. 1233, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 9, 2001.

Sherri B. Glasser, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Leigh S. Halstad, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before HOLLANDER, JAMES R. EYLER and THEODORE G. BLOOM (Retired, specially assigned) JJ.

HOLLANDER, Judge.

In this case, we must consider, *inter alia,* whether the lower court erred by refusing to order the removal during trial of a Baltimore City Detention Center ("BCDC") identification bracelet. A jury in the Circuit Court for Baltimore City convicted Michael Williams, appellant, of possession of cocaine, for which he was sentenced to a term of imprisonment of eighteen months. On appeal, Williams presents the following questions, which we have rephrased slightly, for our consideration:

I. Did the trial court err in refusing to permit appellant to remove a detention center identification bracelet and in

refusing to grant a mistrial once the jury panel observed the bracelet?

II. Did the trial court err in permitting improper prosecutorial closing argument?

For the following reasons, we shall affirm.

## FACTUAL BACKGROUND

At approximately 8:00 p.m on May 22, 2000, Baltimore City Police Officer Robert Neuens was patrolling the area of Rosedale Street and West North Avenue when he observed appellant walking along North Avenue. Officer Neuens recognized Williams from a previous attempt to obtain information from appellant about a shooting that had occurred several weeks earlier. Because the officer had recently received information regarding drug activity in the vicinity, he asked appellant what he was doing in the area, whether he had obtained any information about the shooting, and whether he was "dirty," a slang expression referring to controlled dangerous substances. In response to Officer Neuens's inquiries, appellant admitted that he had recently "copped a little girl," meaning that he had cocaine in his possession. Appellant also provided Officer Neuens with a possible suspect for the shooting.

As a result of the information provided by appellant, Officer Neuens radioed for back-up. When Officer Tashana Auberry arrived, Officer Neuens told her that appellant admitted that he had cocaine on his person. Officer Neuens then "reached" into appellant's pants pocket and seized five vials of suspected cocaine. A subsequent analysis of the substance tested positive for cocaine.

At trial, Officer Auberry corroborated Officer Neuens's account of the events. No witnesses testified for the defense.

During the trial, appellant was required to wear a BCDC identification bracelet around his wrist. Prior to the commencement of voir dire, appellant's counsel approached the bench and asked the court to have the BCDC bracelet re-

moved, so that the jury would not see it. The following colloquy ensued:

THE COURT: I can't take that off.

[DEFENSE ATTORNEY]: I don't want the jury to see it, Your Honor.

THE COURT: I can't take it off. I don't have the authority to take off the [bracelet].

[DEFENSE ATTORNEY]: Your Honor, if you could just call downstairs and asks the officers? They have other—

THE COURT: There's the officer right there.

[THE OFFICER]: The sergeant doesn't want it taken off.

[DEFENSE ATTORNEY]: All right. Your Honor, perhaps you can just—

THE COURT: That's an interesting point that you bring up. I have not encountered that before. Let's put it on the record now so that in the event there's a need to review this case, the appellate court will understand what you're talking about.

You're making a motion to the court to remove the [bracelet], which is the identification band of the defendant, in the [BCDC].

[DEFENSE ATTORNEY]: Yes.

THE COURT: All right.

[DEFENSE ATTORNEY]: Because I don't believe—

THE COURT: And my response to you was, I do not think that I have the power or the authority or that if I have it, I ought to utilize it, to remove that [bracelet] because that is the identifying information that BCDC has. And right now his person is in the control of BCDC.

I have removed the shackles. I have removed the handcuffs, but that can be a hospital band for all they [*i.e.* the jurors] know. But go ahead. Put it on the record.

[DEFENSE ATTORNEY]: Your Honor, just for the same reason that shackles are removed from a defendant before a

jury trial, is that the jury is not supposed to assume based on the fact that he's committed that he—

* * *

THE COURT: Have you ever been successful in getting the judge to remove that wristband?

[DEFENSE ATTORNEY]: It's never been an issue before, Your Honor.

THE COURT: But all of them wear them if they're in custody. All right. Denied.

The next day, defense counsel moved for a mistrial, claiming the jury panel saw appellant's bracelet. No information was provided to the court as to why defense counsel believed the jury had seen the bracelet. The court denied the motion.

We shall include additional facts in our discussion.

## DISCUSSION

### I.

Appellant argues that the court erred in refusing to require the removal of the BCDC identification bracelet and in denying his motion for mistrial on that basis. We find no merit to these claims.

Although we have not found a Maryland case that is precisely on point, the recent case of *Knott v. State*, 349 Md. 277, 708 A.2d 288 (1998), is instructive. There, on the first day of his trial, Knott arrived at the courthouse dressed in a jail uniform. Concerned that the jury would be prejudiced against him because of his "orange, prison-issued jumpsuit," *id.* at 284, 708 A.2d 288, Knott requested a continuance so that he could obtain and wear street clothes. The court denied his request and the defendant was later convicted.

The Court of Appeals reversed. On appeal, the State argued, *inter alia*, that "the record fail[ed] to show that the orange jumpsuit that Knott was wearing was identifiable as prison attire." *Id.* at 291, 708 A.2d 288. The Court disagreed, stating:

When Knott's counsel presented her first reason for a continuance, the trial court immediately recognized where the argument was headed and described the attire as giving the jury a "hint" that Knott was being held in jail. Moreover, the trial judge's ground for denying the opportunity to change into mufti was that the jurors would expect Knott to be in jail because of the severity of the charges and, hence, appearing in prison garb would not be prejudicial. *Implicit in that analysis is that jurors could recognize Knott's garb as that of a prisoner.*

*Id.* (emphasis added)(footnote omitted). Accordingly, the Court concluded that the trial judge " 'should have undertaken some effort to permit the appellant to sit before the jury in clothing that did not give the aura of "prisoner." ' " *Knott,* 349 Md. at 285, 708 A.2d 288 (citation omitted).

In reaching its decision, the *Knott* Court relied on *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), a federal habeas corpus case that involved a criminal defendant who appeared for trial dressed in a prison uniform. There, the Supreme Court considered "whether an accused who is compelled to wear identifiable prison clothing at his trial is denied due process or equal protection of the laws." *Id.* at 502, 96 S.Ct. 1691.

On the morning of trial, the defendant had asked an officer at the jail to allow him to wear civilian clothes, but his request was denied. Subsequently, at trial, neither the defendant nor his counsel made any objection to the identifiable prison attire worn by the defendant. The Supreme Court recognized that, consistent with the Fourteenth Amendment, a state cannot "compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Id.* at 512, 96 S.Ct. 1691. Writing for the Court, Chief Justice Burger explained:

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic

component of a fair trial under our system of criminal justice.

\*　　\*　　\*

To implement the presumption, courts must be alert to factors that may undermine the fairness of the factfinding process.　In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.

\*　　\*　　\*

The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the abstract.　Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system. . . . This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment.　The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play.

\*　　\*　　\*

Unlike physical restraints . . . compelling an accused to wear jail clothing furthers no essential state policy. . . .

Similarly troubling is the fact that compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial.　Persons who can secure release are not subjected to this condition.　To impose the condition on one category of defendants, over objection, would be repugnant to the concept of equal justice embodied in the Fourteenth Amendment.

*Id.* at 503–06, 96 S.Ct. 1691 (internal citations and footnotes omitted).　Nevertheless, the Supreme Court determined that

the defendant's failure to timely object at trial to the prison garments constituted a waiver of his claim of compulsion. *Id.* at 509–10, 513, 96 S.Ct. 1691. *See United States v. Arellano,* 137 F.3d 982 (7th Cir.1998)(holding that defendant who did not object to prison jumpsuit was not compelled to stand trial in prison clothes.)

This case is unlike *Knott* or *Estelle,* in that we see no hint in the record that the bracelet worn by appellant branded him as a prisoner. To the contrary, the trial judge stated that the jurors might think the bracelet was a "hospital band." In effect, then, the court made a factual finding that the bracelet was not readily identifiable as a type of prison attire. Significantly, appellant neither contradicted that assertion nor offered a different description of the bracelet. Moreover, there is no evidence in the record as to the size of the courtroom or the distance between the jurors and appellant, which might have shed light on the question of the visibility of the bracelet. Therefore, we cannot tell from the record whether the jurors could necessarily see the bracelet. Nor do we know whether appellant wore the kind of clothing that would have helped to conceal the bracelet, or even if he asked for such clothing. The State, pointing out that appellant did not attempt to obtain a long-sleeved shirt, says: "A defendant cannot choose clothing which reveals the wristband and then claim that the State compelled him to reveal the wristband to the jury."

We also cannot overlook that, even if the bracelet revealed appellant's status as a detainee, the BCDC has a compelling interest in maintaining the identification of those within its custody, and that interest outweighed the minimal indicia of custody caused by the bracelet. When we consider the risk that the jury might view the wristband as prison attire, and compare that circumstance with BCBD's needs for security and the ability to identify its prisoners, we agree with the State that the bracelet created an insignificant risk. Although a person in an orange jumpsuit might stand out like the proverbial sore thumb, the same cannot be said when a person wears an institution's identification bracelet.

We are aware of only a few decisions in other jurisdictions that have addressed the question of the proper use of prison identification bracelets at trial. Those that have considered the issue have concluded that the use of such a bracelet does not violate a defendant's constitutional rights. *See, e.g., Manning v. State,* 864 S.W.2d 198, 204 (Tex.App.1993) (concluding that defendant's rights were not violated because, *inter alia,* defendant failed to identify "any place in the record showing that the jury actually saw the identification bracelet, either before or after he asked that it be removed, or that it in any way influenced their deliberations or verdict."); *State v. Collins,* 588 So.2d 766, 769 (La.Ct.App.1991) (stating that defendant was not stigmatized at trial by having to wear an orange prison identification bracelet, because "the record in this case does not reflect that the bracelet was identifiable as a prison bracelet."); *overruled on other grounds, State v. Ford,* 643 So.2d 293 (La.Ct.App.1994); *State v. Loya,* 527 So.2d 514, 516 (La.Ct.App.1988) (concluding that the trial judge did not err in refusing to permit the defendant to remove identification bracelet where defendant wore his own clothes, "the bracelet was unobtrusive[, and, i]f the bracelet was noticed or understood by the jury at all, its effect on his appearance was minimal.")

█ Accordingly, we conclude that the trial court did not err in refusing to authorize or compel the removal of the BCDC identification bracelet. In view of that conclusion, it follows that the trial court did not abuse its discretion in denying appellant's motion for mistrial.

## II.

Appellant argues that the trial court erred because it permitted the State to make two improper remarks during closing argument, over defense objection. We disagree.

First, appellant argues that, during rebuttal, the prosecutor improperly attempted "to convince the jury to find appellant guilty ... as a means of addressing an asserted broader societal problem which had no basis in the evidence." The

following excerpts from appellant's closing argument and the State's rebuttal are relevant to Williams's first complaint:

[DEFENSE ATTORNEY]: What the State's Attorney ... kept telling you, that this case has nothing to do with the shooting, *well then perhaps the State's Attorney can explain to us maybe on rebuttal who brought up the shooting that day, who brought up the topic of the shooting.* The police officer did. [Appellant] didn't.

This is a big to-do. It's about a shooting. That's what this case is about, about getting to the evidence. About doing something to get to the shooting that you're not here to condone. There's a right way to prosecute people and there's a wrong way. And what happened that day was the wrong way.

(Emphasis added).

In rebuttal, the prosecutor said:

Who brought up the shooting? Officer Neuens brought up the shooting. Why did he bring up the shooting? It's his job. What would we think of Officer Neuens if he hadn't been investigating crime? What would we think of Officer Neuens if he doesn't investigate criminal activity? Isn't that what we pay them to do? Isn't that what he takes an oath to do? That's what he's supposed to do, and that's what he did.

Ladies and gentlemen of the jury, *from the beginning* I *said this is about an officer doing his* job. That is what it's about. It's about investigating criminal activity. *Sometimes you have to talk with people. Sometimes you have [to] talk with people who you wouldn't ordinarily want to talk with. But, unfortunately,* when *it comes to criminal activity, you don't talk to people like Mayor O'Malley.* We don't talk to people like William Cardinal [Keeler]. You don't talk with people like that. Many times it's the people on the street that you have to talk with to investigate crime....

It would be very nice to be able to go up to *Mayor* O'Malley and ask him about a shooting that occurred in the

*Southwest or Southwestern District, but Mayor O'Malley likely would not know anything about it. It's people like the defendant, who are out on these streets, in these hot spots, as Officer Auberry put it, who knows about these things.*

(Emphasis added).

Second, appellant complains because the prosecution twice referred to the evidence in the case as "uncontradicted." He argues that these remarks amounted to improper comments about appellant's constitutional right not to testify. The following colloquy during the State's closing argument is relevant:

[PROSECUTION]: Ladies and gentlemen of the jury, it is *uncontradicted* that on this date, May 22nd, 2000, that the defendant had these items in his possession.

[DEFENSE ATTORNEY]: Objection, Your Honor.

THE COURT: Overruled.

(Emphasis added).

■ Closing argument " 'is a robust forensic forum wherein its practitioners are afforded a wide range of expression.' " *Clarke v. State,* 97 Md.App. 425, 431, 630 A.2d 252 (1993)(quoting *Davis v. State,* 93 Md.App. 89, 124, 611 A.2d 1008 (1992), *aff'd,* 333 Md. 27, 633 A.2d 867 (1993)); *see Degren v. State,* 352 Md. 400, 429, 722 A.2d 887 (1999) (stating that "attorneys are afforded great leeway in presenting closing arguments to the jury.") " 'The prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom.' " *Degren,* 352 Md. at 429–30, 722 A.2d 887 (quoting *Jones v. State,* 310 Md. 569, 580, 530 A.2d 743 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988)).

■ "Despite the wide latitude afforded attorneys in closing arguments, there are limits in place to protect a defendant's right to a fair trial." *Degren,* 352 Md. at 430, 722 A.2d 887; *see Wilhelm v. State,* 272 Md. 404, 413–15, 326 A.2d 707 (1974).

Nonetheless, not every improper comment requires reversal. *Degren,* 352 Md. at 430, 722 A.2d 887; *Hunt v. State,* 321 Md. 387, 435, 583 A.2d 218 (1990). Reversal is warranted only if " 'it appears that the remarks of the prosecutor actually misled or influenced the jury to the prejudice of the accused.' " *Degren,* 352 Md. at 431, 722 A.2d 887 (quoting *Jones,* 310 Md. at 580, 530 A.2d 743). This determination rests largely in the control and discretion of the presiding judge, and an appellate court should not reverse the trial court unless there has been an " *'abuse of discretion* by the trial judge of a character likely to have injured the complaining party.' " *Henry v. State,* 324 Md. 204, 231, 596 A.2d 1024 (1991), *cert. denied,* 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992) (quoting *Wilhelm,* 272 Md. at 413, 326 A.2d 707)(italics in original).

 With respect to appellant's first complaint, which concerned the prosecutor's remarks in rebuttal, appellant focuses on the following statement by the prosecutor: "It's people like the defendant, who are out on the streets . . . who knows about these things." We believe that appellant has taken that remark out of context. As we set forth above, it is clear that the prosecutor made the comment after he was prompted by the defense to explain why the police officer chose to speak to appellant about the shooting on the night in question. Consequently, the State was attempting to explain that a police officer is more likely to obtain information relevant to such to an investigation by talking to people in the area who may know about the incident.

The Court of Appeals has said that, "under certain circumstances, a prosecutor's argument during rebuttal and in response to comments made by the defense during its closing are proper." *Degren,* 352 Md. at 431, 722 A.2d 887; *see Blackwell v. State,* 278 Md. 466, 481, 365 A.2d 545 (1976), *cert. denied,* 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977). In our view, this is such a case. *White v. State,* 125 Md.App. 684, 703–04, 726 A.2d 858, *cert. denied,* 354 Md. 573, 731 A.2d 971 (1999), is instructive. There, we said:

Appellate courts have, in scrutinizing closing argument, approved the prosecutors' mentioning the conditions of crime within the community, such as the commonly understood murder rates, and the scourge of drugs, but such arguments must clearly confine themselves to the recounting of common knowledge and not put before the jury facts not in evidence. Neither should the argument make an appeal to convict upon less than sufficient evidence. An argument that the community is concerned about the serious effect of a certain crime must be framed in such a way as to remind the jury of its duty to convict when the evidence supports conviction, and not for the jurors to place their own personal interests before their obligation to decide the issues on the evidence. When prosecutors or defense attorneys accurately recount the evidence, even though the evidence arouses emotion, they do not trespass beyond the line that prohibits an unwarranted appeal to passion. The evil to be avoided is the appeal that diverts the jury away from its duty to decide the case on the evidence. Those arguments calculated to do so are what the law forbids by an appeal to passion, not those arguments that recount the evidence that evokes sympathy or emotion and therefore touches the passions of normal jurors.

(Internal citations omitted).

In the case *sub judice,* the disputed comment did not "undermine[ ] the bedrock principle that a defendant is presumed innocent until proven guilty...." *Degren,* 352 Md. at 431, 722 A.2d 887. Defense counsel challenged the State to explain to the jury why the officer brought up the topic of the shooting and the prosecution responded. The prosecution's rebuttal argument was a reasonable response to defense counsel's invitation. *See Brown v. State,* 339 Md. 385, 394, 663 A.2d 583 (1995) (stating that a State's rebuttal closing argument is proper if it is "nothing more than a reasonable reply to the arguments made by defense counsel.").

██ As noted, appellant also complains about the State's reference to "uncontradicted evidence," suggesting the remark

amounted to an improper attack on appellant's right not to testify. This contention is equally unavailing, because we fail to see how the jury could perceive the prosecution's statements as a comment on the failure of appellant to testify.

Two officers testified for the State that appellant was in possession of cocaine. In closing, the defense challenged the officers' credibility, suggesting that appellant had been pursued because of the investigation of the shooting, and that the officers' version of events as to appellant's admission of the possession of drugs was implausible. As the State points out, "Juries are clearly free to consider whether or not evidence is uncontradicted in evaluating the case presented and juries are also free to disregard uncontradicted evidence which they do not find to be credible." The State adds that "[t]hese considerations are not inconsistent with the right of the defendant not to testify . . . ."

In this regard, it is significant that the court instructed the jury about the defendant's right not to testify, as follows:

> Ladies and gentlemen of the jury, you are the sole judges of whether a witness should be believed. And in making this decision, you may apply your own common sense and everyday experiences. In determining whether a witness should be believed, you should carefully judge all the testimony in evidence, and the circumstances under which the witness testified.

> You should consider such factors as the witness['s] behavior on the stand and manner of testifying; . . . *was the witness['s] testimony supported or contradicted by the evidence you believe* . . . .

> *You see, you need not believe any witness even if the testimony is uncontradicted.* You may believe all, part or none of the testimony of any witness.

> The defendant has an absolute constitutional right not to testify. *The fact that the defendant did not testify must not be held against the defendant. It must not be considered by you in any way or even discussed by you.*

(Emphasis added). No objection was taken to that instruction. Moreover, we presume that juries follow the instructions of trial judges. *Wilson v. State,* 261 Md. 551, 570, 276 A.2d 214 (1971); *Matthews v. State,* 106 Md.App. 725, 743, 666 A.2d 912 (1995), *cert. denied,* 341 Md. 648, 672 A.2d 623 (1996).

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**