820 A.2d 593

**Ted Aaron McCRACKEN**

v.

**STATE of Maryland.**

No. 138, Sept. Term 2002.

Court of Special Appeals of Maryland.

March 31, 2003.

332

Carrie S. Leonetti, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and John L. Scarborough, State's Attorney for Cecil County of Elkton, on the brief), for appellee.

Argued before HOLLANDER, SALMON, and JAMES R. EYLER, JJ.

JAMES R. EYLER, Judge.

On January 17, 2002, a jury in the Circuit Court for Cecil County convicted Ted Aaron McCracken, appellant, of carrying a concealed deadly weapon. The court sentenced appellant to a term of imprisonment of three years, with all but fifteen months suspended, and three years of probation upon release. On appeal, appellant contends that the trial court (1) failed to comply with the waiver of counsel provisions of Maryland Rule 4-215, (2) erred in permitting the State to

offer rebuttal testimony regarding appellant's statements to police while in their custody, (3) committed plain error by permitting the State's inflammatory and mischaracterizing closing argument, (4) erred by failing to exercise its discretion pursuant to Maryland Rule 4–265 to waive the time requirements for appellant to request the issuance of subpoenas, and (5) erred in denying appellant's motion for judgment of acquittal. We shall reverse based on issue (2) and shall comment on the other issues for the benefit of the court on remand.

## Facts

On May 10, 2000, appellant entered the First National Bank of North East in Elkton, Maryland. One of the bank tellers, believing that she observed a suspicious bulge in appellant's jacket, contacted the Elkton Police Department.

At a pretrial suppression hearing on the morning of the trial, Officer Ronald Odom of the Elkton Police Department testified that he entered the bank and spoke with Sylvia Jones, a bank clerk, who informed him that there was a man inside the bank attempting to open a new account and that the teller assisting him had noticed a bulge under his jacket and a strap across his chest. Officer Odom testified that he walked over to where appellant was seated, grabbed hold of appellant's arm, advised him that he was going to come outside with him and to keep his hands where he could see them, maintained control of appellant, and escorted him outside. Officer Odom further testified that he observed a holster strap across appellant's chest, but that he could not see a gun at that time because of the jacket that appellant was wearing. Officer Odom testified that, once outside, he and Patrolman James Anderson patted appellant down, felt a bulge, and removed a weapon.

Officer Odom described the gun as "an old-time civil war type revolver" and testified that he had "very little knowledge of those types of firearms." He also testified that appellant explained, at the time, that the firearm "wasn't real," but when asked if, when the trigger was pulled, the firearm shot a projectile out of the muzzle, appellant responded that it would.

Finally, Officer Odom asked appellant if, when fired, the gun was capable of killing somebody, and appellant responded that it was. Also at the pretrial suppression hearing, Patrolman Anderson testified that, when he arrived at the scene, Officer Odom was escorting appellant out of the bank to talk to him. Patrolman Anderson testified that, after explaining to appellant that they were going to pat him down, and when they began to do so, appellant stated that he had a revolver in a shoulder holster. The officers asked appellant to keep his hands up and away from the weapon, and Patrolman Anderson removed the firearm from appellant's holster and secured it in his vehicle. Patrolman Anderson also testified that the firearm appeared to be an "old-style revolver," admitted that he was not a pistol expert, but explained that there appeared to be two "wadded or loaded cylinders" on the discharge side of the weapon. He testified that he believed that the gun required a primer cap, black powder, and a lead ball in order to be loaded. On cross-examination, Patrolman Anderson testified that he did not remove the cylinder from the weapon at the scene because he was not familiar enough with it in order to disassemble it safely.

Appellant also testified at the suppression hearing, explaining that once the officers had taken the gun, they began asking him questions about where he had been. Appellant testified that the officers placed him in handcuffs and took the gun from him before posing any questions to him. Appellant testified that he had just come from the shooting range that morning and did not have time to take the weapon home and put it away. He testified that he had gone into the bank to open an account and to deposit a $1500 check that he had just received. When appellant was taken into custody, he had the check, his passport, and his driver's license on the desk in front of him. Appellant explained that, at the time that the officers arrested him, the gun was not loaded in a way that it could be fired because it required four components in order to fire—a ball projectile, wadding, black powder, and a percussion firing cap—and none of the chambers in the gun contained all four of those components.

The trial court denied appellant's motion to suppress the gun, reasoning that the officers had probable cause for the stop and search and to pat appellant down for weapons. The court granted appellant's motion to suppress the statements appellant made to police during the arrest, however, finding that appellant was in custody from the moment that the officer entered the bank and escorted appellant outside, such that if the officers wanted to question appellant, they were obligated to advise him of his *Miranda* rights. Their failure to do so mandated suppression of appellant's statements.

On the day of trial, appellant, proceeding *pro se,* asked the court to allow him to issue subpoenas. The court explained that subpoenas are intended to be issued ahead of time, in preparation for trial, and denied appellant's request.[1]

On the morning of trial, appellant also asked the court to reconsider his earlier request for assignment of counsel. After reviewing appellant's previous discharges of attorneys and failure to secure alternative counsel through the Public Defender's Office, the court found that appellant effectively waived his right to counsel. Accordingly, the court explained that the case would go to trial that day with appellant representing himself.[2]

At trial, Yvonne Titter, a bank teller, testified that appellant told her that he wanted to open an account, that she asked him to have a seat in the lobby, and that when he sat down, the front of his jacket came open and she saw the "end" of a gun.

Sylvia Jones, another bank employee, testified at trial that she assisted appellant in opening a new account while waiting for police to arrive. Ms. Jones stated that, when appellant reached into his jacket to produce identification to open the account, she observed the butt of a gun.

---

1. Additional facts will be provided in our discussion of this issue in section IV, under Discussion.

2. Additional facts relevant to the issue of appellant's waiver of counsel will be discussed in section II of the Discussion Section.

Officer Odom and Patrolman Anderson were also called by the State at trial. They testified to the same information that they had provided during the suppression hearing, except for that which had been suppressed by the court pertaining to appellant's statements at the time of arrest.

In addition, Officer Odom testified at trial that he was not familiar enough with the firing mechanism of black powder weapons to testify about them, but stated that four of the six chambers of the gun were empty and that the other two contained cotton swabbing. He also testified that there were caps placed on two of the cylinders and that he assumed there were projectiles in those two chambers. Finally, Officer Odom testified that he did not disassemble the pistol when he seized it.

Patrolman Anderson testified at trial that the gun had four empty cylinders, two full ones, and there were firing caps on the two full ones. He also testified that the gun was transported to the Elkton Police Department assembled within its holster, and the gun was never fired while in police possession.

Patrolman Dennis Wood testified at trial that he was familiar with black powder weapons as a firearms instructor. He testified that, in order to fire, the seized weapon would need black powder, a lead projectile ball, a percussion cap attached to the rear of the cylinder, and a patch attached to the front of the round. Patrolman Wood testified that the gun would not be operational without the percussion caps and there were no percussion caps on the gun when he examined it. He testified that four empty chambers on the gun appeared to have been loaded, primed, and discharged.

At the end of the State's case, appellant moved for judgment of acquittal, arguing that the State had failed to prove concealment of a dangerous or deadly weapon. The court denied the motion.

Appellant chose to testify in his own defense at trial and explained that, when he was arrested, he was returning from the Elk Neck State Park shooting range, where he had fired the weapon in order to clean it out and get the bullets out of

it. Appellant also testified that he never had any intent to conceal the weapon, as was evidenced by the fact that it was clearly observable by people in the bank. Finally, appellant testified at trial about some car accidents and an incident with a neighbor that led him to believe that he needed to carry a weapon for protection.

On cross-examination, appellant testified that the gun was not loaded when he carried it into the bank because he had emptied it at the firing range. Appellant explained that the gun did not have all of the components necessary for the weapon to fire, in alignment, at the time that he was arrested.

The State called Patrolman Anderson as a rebuttal witness for the purpose of impeaching appellant's cross-examination testimony that the gun was not loaded at the time of the incident. Appellant objected on the grounds that Patrolman Anderson would testify about a conversation he had with appellant, but the court allowed the officer to testify for impeachment purposes. Patrolman Anderson testified that at the time of his arrest, appellant told himself and Officer Odom that the weapon was loaded, capable of firing, and that if fired, the projectile would exit the barrel and have a potentially deadly effect if someone were struck.

The jury convicted appellant of carrying a concealed dangerous or deadly weapon, pursuant to section 36 of article 27 of the Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.). A timely appeal was filed to this Court.

## Discussion

We shall address the issues out of order because resolution of the second issue presented by appellant mandates reversal of his conviction. The remaining issues will be discussed in various levels of depth.

### 1

Appellant contends that the trial court erred in permitting the State to offer rebuttal testimony regarding appellant's statements to police while in custody.

As previously stated, the court granted appellant's motion to suppress the statements that he made to the arresting officers while in custody on the grounds that they were the result of custodial interrogation, and the police did not first advise him of his *Miranda* rights. During the presentation of the State's case, Officer Odom and Patrolman Anderson were called to the stand but were not permitted to testify about appellant's statements. During the prosecutor's cross-examination of appellant, appellant stated that the gun he wore into the bank was not loaded or capable of being fired. At the close of appellant's case, the State recalled Patrolman Anderson to the stand as a rebuttal witness.

The following exchange occurred when Patrolman Anderson retook the stand.

[Prosecutor]: Officer Anderson, you heard the testimony of Mr. McCracken. Mr. McCracken made a statement that he said the gun wasn't loaded at the time of the incident. Is that what he advised you at the time in which you confiscated the gun?

[Witness]: No, sir.

[Appellant]: Objection

[The Court]: Just a minute. Just a minute. What are you objecting to? What's the basis for your objection?

[Appellant]: He's asking—he's relating something about the conversation that he claims he had with me.

[The Court]: What is the basis for your asking the question?

[Prosecutor]: For impeachment purposes, Your Honor.

[The Court]: What's the impeachment purpose. What did he say that you want to rebut?

[Prosecutor]: That Mr. McCracken stated to the officers that he had a gun and it was loaded at the time of the incident.

[The Court]: What did he say he said?

[Prosecutor]: He said before that it wasn't. He testified on cross that the gun wasn't loaded at the time.

[The Court]: All right. I will permit it.

[Witness]: He stated to myself and Officer Odom the weapon was loaded, the weapon was capable of firing, and if the weapon was fired that a projectile would exit the barrel.

[Prosecutor]: And did he say what effect that would have on anybody?

[Witness]: The potentially deadly effect if they were struck.

During its closing, the State relied on Patrolman Anderson's rebuttal testimony, reminding the jurors that the defendant told the officers that the gun was loaded at the time that he was taken into custody.

Appellant concedes, as he must, that statements that are deemed inadmissible in the State's case in chief based on a *Miranda* violation may nevertheless be admissible in rebuttal to impeach a defendant's trial testimony. *See* Md. Rule 4–252(h)(2); *see also Oregon v. Hass,* 420 U.S. 714, 723–24, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) (explaining that even though "the Government cannot make an affirmative use of evidence unlawfully obtained," the defendant should not be permitted to "provide himself with a shield against contradiction of his untruths"); *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977) (recognizing the *Harris–Hass* impeachment exception to the *Miranda* exclusionary rule). Appellant argues, however, that there was no reasonable inference of inconsistency sufficient to invoke the *Harris–Hass* impeachment exception. Specifically, appellant contends that his testimony during cross-examination stated that the pistol was not loaded and capable of being fired at the time of his arrest, *i.e.,* did not have all of the necessary components to fire, in alignment, at the time of the arrest, while the impeaching statement attributed to him only conveyed that the firearm was functional and capable of firing a lethal projectile, *i.e.,* that it was a "real," functioning firearm. Appellant also argues that the statements constituted improper rebuttal evidence because the State failed to lay a proper foundation for the introduction of appellant's statements as rebuttal evidence and because the

statements were beyond the scope of permissible rebuttal in this case.

In response, the State first argues that appellant's claim was not properly preserved for review because his current claims differ from the basis for his objection that he offered to the trial court. On the merits, the State argues that the rebuttal testimony was directly inconsistent with appellant's statement on cross-examination and that the trial court properly exercised its discretion in admitting the testimony as impeachment evidence.

While we acknowledge the State's argument that appellant's basis for objecting to the rebuttal testimony did not mention the specific claims he now raises, we think that it was sufficiently broad to preserve those claims for appellate review. We also conclude that the trial court erred in permitting the State to offer the rebuttal testimony, given its failure to lay the proper foundation for impeaching appellant with a prior inconsistent statement, pursuant to Maryland Rule 5–613.

We decline to find that the error was harmless because appellant's attempts to demonstrate why his statements were not inconsistent reflect the explanation that presumably would have been given had the State laid the proper foundation during cross-examination by questioning appellant about his previous statements.

In *State v. Kidd*, 281 Md. 32, 375 A.2d 1105 (1977), the Court of Appeals' first opportunity to discuss the full impact of the *Harris* and *Hass* holdings, the Court adopted a narrow interpretation of the exception. *See id.* at 47, 375 A.2d 1105 ("We construe *Harris* and *Hass* as requiring that the issues sought to be impeached by the challenged extrajudicial statement of the accused be initiated by the accused on direct examination. The prosecution is not permitted to use tainted evidence to impeach an issue which it first solicited on cross-examination."); *see also id.* at 49, 375 A.2d 1105 ("We also construe *Harris* and *Hass* as limiting the impeachment exception to the specific credibility of the defendant on matters as to which there is a contradiction between his testimony and

the impeaching statement. The limitation of *Miranda* does not extend to the defendant's credibility generally, but to his specific credibility arising from a realistic contradiction between the issues he initiated on direct examination and the impeaching statement.")

More pertinent to our resolution of this case, the *Kidd* Court also observed that Maryland law requires additional procedures when impeaching a witness with a prior inconsistent statement, even when doing so with a statement that is inadmissible in the State's case-in-chief because of a *Miranda* violation. *Id.* at 47 n. 8, 375 A.2d 1105.[3] The Court stated:

> We observe that the general rule is that the credit to be given a witness may be impeached by showing that he has made statements which contradict his testimony in respect to material facts (but not in respect to facts which are collateral, irrelevant or immaterial), provided a proper foundation has been laid. *Smith v. State,* 273 Md. 152, 157–160, 328 A.2d 274 (1974); *Joppy v. Hopkins,* 231 Md. 52, 56, 188 A.2d 545 (1963), and cases cited therein; *Kantor v. Ash,* 215 Md. 285, 290, 137 A.2d 661 (1958); *Mahan v. State,* 172 Md. 373, 380, 191 A. 575 (1937); *Davis v. State,* 38 Md. 15, 50 (1873). The foundation is laid by interrogating the witness as to when, the place at which, and the person to whom such contradictory statements were made. This is but fair and just in order that the witness may be enabled to refresh his recollection in regard to such statements, and be afforded the opportunity of making such explanation as he may deem necessary and proper. *Baltimore Transit Co. v. Castranda,* 194 Md. 421, 439, 71 A.2d 442 (1950); *O'Brien v. State,* 126 Md. 270, 285, 94 A. 1034 (1915); *Brown v. State,* 72 Md. 468, 475, 20 A. 186 (1890). If the witness denies making the

---

3. Because the appellant in *Kidd* did not raise an issue regarding the laying of a foundation for the introduction of the impeaching statement either below or on appeal, the Court did not apply the rule to the facts of the case. We do note, however, that the Court, in its recitation of the facts, mentioned that the prosecutor asked Kidd on cross-examination whether he had made the statement to the officer. *Kidd,* 281 Md. at 44, 375 A.2d 1105.

designated statement or asserts that he does not remember whether he made it, the foundation contemplated by the general rule for the introduction of the statement has been satisfied. *See Campbell, etc. v. Patton,* 227 Md. 125, 141, 175 A.2d 761 (1961); *Moxley v. State,* 205 Md. 507, 516–517, 109 A.2d 370 (1954); *Myers v. State,* 137 Md. 482, 490, 113 A. 87 (1921); *Leister v. State,* 136 Md. 518, 523, 111 A. 78 (1920). *See generally Cooper v. State,* 14 Md.App. 106, 110–111, 286 A.2d 579 (1972); *Sanders v. State,* 1 Md.App. 630, 640–641, 232 A.2d 555 (1967).

*Id.*

The foundational requirements for impeaching a witness with a prior inconsistent statement are reflected in the plain language of Maryland Rule 5–613, which provides:

(a) **Examining witness concerning prior statement.** A party examining a witness about a prior written or oral statement made by the witness need not show it to the witness or disclose its contents at that time, provided that before the end of the examination (1) the statement, if written, is disclosed to the witness and the parties, or if the statement is oral, the contents of the statement and the circumstances under which it was made, including the persons to whom it was made, are disclosed to the witness and (2) the witness is given an opportunity to explain or deny it.

(b) **Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is not admissible under this Rule (1) until the requirements of section (a) have been met and the witness has failed to admit having made the statement and (2) unless the statement concerns a non-collateral matter.

Md. Rule 5–613 (2003).

In *Bane v. State,* 73 Md.App. 135, 533 A.2d 309 (1987), we recognized that "[t]he purpose of laying a foundation is 'to accord the witness the opportunity to reflect upon the prior statement so that he may admit it or deny it, or make such explanation of it as he considers necessary or desirable.' " *Id.*

at 155, 533 A.2d 309 (quoting *Devan v. State,* 17 Md.App. 182, 193, 300 A.2d 705, *cert. denied,* 268 Md. 747 (1973)). In addition, we recognized more recently that " '[w]hen using a previously made *oral* statement for impeachment, the cross-examiner must inform the witness of the time and place the statement was made, the person to whom it was made, and its substance.' " *Snyder v. State,* 104 Md.App. 533, 560, 657 A.2d 342 (1995) (quoting *Bane,* 73 Md.App. at 155, 533 A.2d 309).

■ It is clear from the record that the State failed to give appellant an opportunity, during cross-examination, to explain his statements to the officers. After eliciting testimony from appellant on cross-examination, to the effect that the gun was not loaded when he entered the bank on the day in question, the prosecutor followed up by commenting that the officers said the gun was loaded, which appellant responded to by further explaining that the gun did not have all of the necessary components to fire at the time. The prosecutor never asked appellant about the circumstances surrounding the statements he made to the officers at the time of his arrest, nor did he allow appellant to admit, deny, or explain the substance of the statements. Instead, the prosecutor waited for appellant to rest his case and then called Patrolman Anderson to the stand as a rebuttal witness to impeach appellant's testimony through extrinsic evidence.

Given the State's failure to satisfy the foundational requirements for impeachment by a prior inconsistent statement, we hold that the court erred in permitting the rebuttal testimony and must reverse appellant's conviction and remand for a new trial. Our conclusion that the State's failure to lay a proper foundation constitutes reversible error is supported by the fact that appellant offers a plausible explanation as to what his statements to the officers meant, such that if his version was accepted, the statements would potentially no longer be viewed as inconsistent. The purpose underlying Rule 5–613 suggests that this is exactly the type of situation for which the foundational requirements were created.

■ A finding of reversible error is also supported by the nature of the inconsistency in the present case and the court's failure to give a limiting instruction. The impeachment centered on the issue of whether the gun was loaded when appellant entered the bank, a key fact relevant to proving the intent element of the crime with which appellant was charged. Although the nature of the inconsistency does not affect the requirements necessary for laying a proper foundation, it does lead us to conclude that appellant was prejudiced by the fact that no limiting instruction was given to explain to the jury that the impeachment testimony could only be considered for its impact on appellant's credibility as a witness and not as substantive evidence of guilt.

This distinction was discussed in *Hall v. State*, 292 Md. 683, 441 A.2d 708 (1982), where the Court's holding that the trial court's failure to give a limiting instruction did not amount to plain error relied heavily on the fact that the testimony by its nature was not substantive evidence of guilt and could only have been interpreted as impacting on credibility. *Id.* at 689–92, 441 A.2d 708. The impeachment testimony in *Hall* was more collateral than the impeachment in this case. The impeachment testimony offered by the State focused on a fact directly relevant to the jury's determination of appellant's guilt. We hold that the court's failure to give a limiting instruction, even if that point is unpreserved, constitutes plain error under the circumstances of this case.

2

Appellant also contends that the trial court failed to comply with the waiver of counsel provisions set forth in Maryland Rule 4–215 and that such failure resulted in a violation of appellant's Sixth Amendment right to the assistance of counsel. While our holding on the first issue means that appellant's conviction will be reversed and the case will be remanded to circuit court, we shall address the waiver of counsel issue for guidance on remand. After reviewing Maryland Rule 4–215 in its entirety, the record in the case in great detail, and applicable case law, we are satisfied that the court did not err

in finding that the requirements of Rule 4–215 had been complied with.

Appellant argues that the trial court never complied with the mandatory waiver of counsel provisions of Rule 4–215. Recognizing that the rule provides three basic ways that a criminal defendant may waive the right to counsel—express waiver, waiver by inaction, or waiver by discharge of counsel—each manner having different requirements, appellant contends that none was met by the trial court in this case. Appellant also asserts that an additional set of requirements, common to all three approaches, was not satisfied by the trial court. Consequently, appellant claims that these alleged defects constitute reversible error entitling appellant to a new trial.

First, the State argues that examination of district court documents demonstrates compliance with the preliminary requirements of Rule 4–215(a). Next, the State argues that Rule 4–215(b), governing express waivers, is inapplicable because appellant never indicated a desire to waive counsel. Finally, acknowledging that it is somewhat unclear whether the trial court's finding of waiver of counsel was based on subsection (d), governing waiver by inaction, or subsection (e), governing waiver by discharge of counsel, the State contends that the trial court successfully complied with both.

A careful review of the record leads to the conclusion that the trial court's finding of waiver was based on satisfaction of the subsection (d) procedures for waiver by inaction, and that pursuant to subsection (d), the preliminary requirements of subsection (a) were also satisfied.

"Maryland Rule 4–215 implements the constitutional mandates for waiver of counsel, detailing the specific procedure that must be followed by the trial court in order for there to be a knowing and intelligent waiver." *Johnson v. State,* 355 Md. 420, 444, 735 A.2d 1003 (1999) (*Vincenti v. State,* 309 Md. 601, 604, 525 A.2d 1072 (1987); *Fowlkes v. State,* 311 Md. 586, 609, 536 A.2d 1149 (1988)). The *Johnson* Court further explained that "[w]hether the defendant's waiver is expressly

made to the judge by requesting to proceed to trial *pro se,* by inaction through simply appearing at trial without counsel present, or through discharging an attorney whose appearance has been entered, the trial court must comply with Md. Rule 4–215 in order for the defendant's waiver of counsel to be valid." *Id.*

Maryland Rule 4–215 provides in pertinent part:

(a) First appearance in court without counsel. At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

(1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

(2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

(3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

(4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

(5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel. The clerk shall note compliance with this section in the file or docket.

. . .

(d) Waiver by inaction—Circuit court. If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the

court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

Md. Rule 4–215 (2003). The plain language of the rule indicates that the court may not find that there has been an effective waiver pursuant to subsection (d) unless the record demonstrates compliance with subsection (a). *See Johnson,* 355 Md. at 446, 735 A.2d 1003 (citing *Smith v. State,* 88 Md.App. 32, 40, 591 A.2d 902 (1991) ("Rule 4–215 requires the circuit court to comply with Rule 4–215(a) before determining that there has been a waiver by inaction.")). In addition, the plain language of subsection (a) suggests that its requirements may be satisfied by the district court, rather than the circuit court, where the defendant appears in the district court without counsel and demands a jury trial.

The record in this case indicates that appellant originally appeared in the District Court for Cecil County, without counsel, and entered a prayer for a jury trial. In addition, a bail review form, dated May 11, 2000, and signed by Judge Floyd L. Parks, Jr., indicates through checks on the form that the judge made certain that appellant received a copy of the charging document and that his rights were given by video. A transcript of the videotaped advisement of rights, including a thorough explanation of the right to counsel and the importance of obtaining counsel, as propounded by Judge McKinney, is also included in the record. Two other district court documents, each entitled Bail Review Summary Form, one of which was signed by Judge Parks and the other by appellant, confirm that on May 11, 2000, appellant received a copy of the charging document, was informed of his right to counsel and of the importance of the assistance of counsel, was advised of

the nature of the charges and the allowable and mandatory penalties, was advised that his next appearance without counsel could be considered a waiver and was referred to the Public Defender's Office.

The record further indicates that on July 17, 2000, John Henderson, a public defender, filed his appearance on appellant's behalf in the Circuit Court for Cecil County. Mr. Henderson's appearance was struck on December 14, 2000.

Richard Boucher, a privately retained defense attorney, entered his appearance on November 17, 2000. On January 16, 2001, Mr. Boucher requested the circuit court's permission to withdraw his appearance on the basis of a series of conflicts that he had with appellant, including a dispute over a fee agreement. The court granted the motion to withdraw, as well as a continuance, and urged appellant to contact the Public Defender's Office immediately in order to seek representation. The court also warned appellant that "if you show up in court the next time this matter is scheduled without counsel, whoever the presiding judge is will in all probability decide that you have waived your rights to counsel and proceed with the trial."

The docket indicates that John Whelan, of the Public Defender's Office, entered his appearance on behalf of appellant on February 1, 2001. However, on July 5, 2001, the next time appellant appeared in court, Mr. Whelan moved the court to strike his appearance on the grounds that appellant had indicated that he did not want his representation. Mr. Whelan explained that they had had a couple of conversations on the phone, but that he and appellant had never met in person because appellant made numerous appointments but failed to keep them. Appellant told the court that the public defender was "completely indifferent to everything that [he] had spoke to him about [his] case." The court responded that it was up to the Public Defender's Office to assign an attorney, and that appellant's attorney was very capable, but concluded that if appellant was unsatisfied, *i.e.,* did not like him, he should go back to the Public Defender's Office and work it out with

them. The court granted a postponement, struck the public defender's appearance, and explained to appellant that this was the last postponement and that the next time a date was set, the case was going to trial.

Next, on September 6, 2001, appellant appeared in court again without counsel, and requested that the court appoint a private attorney to represent him. The court granted a postponement because the State had not expected appellant to appear; however, the following exchange occurred between the court and appellant regarding appellant's need for representation:

[The Court]: There are only two possibilities in the state of Maryland. If you qualify for the public defender's office they will represent you and who was assigned to your case is no choice of yours. I can only tell you this, if you discharged somebody that was from the local office you made a very bad mistake because the people in our public defender's office—no insult to the private attorneys in here—have the most experience of any attorney in town in criminal cases or traffic cases. They are in court every day and it doesn't cost you anything if you qualify. So if you discharged a public defender you made a grievous mistake and it's too late to correct it now. You probably have the option of going to talk to the public defender for the county, Ms. Murray. She may reconsider, but she may not.

The other option is private attorney retention. I don't have the money—the court system doesn't have the money to appoint an attorney for you and pay for that attorney. So the options are public defender or privately-retained attorney.

You do want an attorney, as I understand it?

[Appellant]: Absolutely.

[The Court]: All right. The charge against you is pretty serious, so you better have representation. In view of the State's position I'm going to continue this matter.

The next time that you appear in court after you receive your next trial notice if you show up without an attorney the

trial goes on. Understood? So either talk to the public defender's office or get a privately-retained attorney. Understood?

[Appellant]: I understand what you are saying. I just—it's very difficult to comply with—I don't have any means of retaining counsel.

[The Court]: Well, you better go back and see Ms. Murray again and see if she will reconsider her position and assign somebody to you if you, in fact, do not have the assets to afford an attorney.

Finally, on January 17, 2002, the morning of trial, appellant again appeared without counsel and asked the court to assign him counsel. The following colloquy occurred:

[The Court]: Well, you did apply and qualified for the public defender and the public defender did enter their appearance for you in July of last year. You came in and you wanted a postponement because you were firing Mike Whelan [sic], who was the public defender, and I told you at that time I granted your motion and I said no more postponements. And I also advised you you'd have to go back to the Public Defender's Office and work it out with them because, sir, you have the right to apply for a public defender, but you don't have the right to dictate to them who will represent you. If you want to fire your attorney, you can do that, but I told you then to go back to the public defender and work it out and you never did.

[Appellant]: I have. I've called and I've called and I've gone over there. I've written letters to Ms. Murray, who is the executive director of the Public Defender's Office.

[The Court]: I've heard nothing from them. All I can tell you, sir, is you can't tell them who to appoint. You fired your attorney. I find that you effectively waived your right to an attorney and the case will go to trial.

Following the court's finding that appellant had effectively waived his right to counsel, the court proceeded with a hearing on appellant's motion to suppress and then the trial on the merits, with appellant representing himself.

■ Appellant first argues that the record does not demonstrate compliance with the mandatory procedures outlined in Rule 4–215(a), pointing out that the State concedes that no Rule 4–215(a) advisement is reflected in the circuit court transcripts. Appellant's argument relies for support on the proposition that satisfaction of the subsection (a) requirements by a district court judge is not sufficient, a proposition based on misinterpretation of case law, and which is inapplicable under the specific circumstances of the present case. While the State agrees that the circuit court transcripts do not reflect compliance with all of the subsection (a) requirements, it argues that the record does demonstrate that appellant was advised in compliance with Rule 4–215(a) by a district court judge when he first appeared without counsel and prayed a jury trial.

Subsection (a) mandates that its five advisements be given to a criminal defendant "[a]t the defendant's first appearance in court without counsel, *or when the defendant appears in the District Court without counsel, demands a jury trial,* and the record does not disclose prior compliance with this section by a judge...." Md. Rule 4–215(a) (emphasis added). Based on this language, the State argues that the district court record, which indicates that appellant appeared without counsel and prayed for a jury trial, and that a district court judge advised appellant in compliance with subsection (a), satisfies the requirements of Rule 4–215(a). We agree.

First, the "Bail Review Form," signed by Judge Parks, recites compliance with Rule 4–215(a)(1), which mandates that the defendant be given a copy of the charging document. The Bail Review Form also indicates that appellant's rights were given by video and included a thorough explanation of the right to counsel and of the importance of obtaining counsel, satisfying subsection (a)(2) of the rule. Next, the "Bail Review Summary," signed by both Judge Parks and appellant, confirms that appellant was informed of his right to counsel and of the importance of obtaining counsel, pursuant to (a)(2); advised of the nature of the charges and the allowable and mandatory penalties, pursuant to (a)(3); and advised that his

next appearance without counsel could be considered a waiver, pursuant to (a)(5). In addition, appellant was specifically referred to the Public Defender's Office. Based on this, we are satisfied that the district court judge provided appellant with all of the subsection (a) advisements.[4]

Appellant argues that the lack of on-the-record compliance in the circuit court disposes of the claim. Specifically, appellant claims that the portions of the record to which the State points are insufficient to demonstrate compliance with Rule 4–215(a) for two reasons. First, relying on *Johnson v. State*, 355 Md. 420, 453, 735 A.2d 1003 (1999), and *Evans v. State*, 84 Md.App. 573, 580, 581 A.2d 435 (1990), appellant argues that an advice of rights from a district court judge during a bail review hearing does not satisfy the rule. Second, also relying on *Johnson*, appellant asserts that the full advisements required by Rule 4–215(a) must be given during a single proceeding, by a single circuit court judge, point by point, not piecemeal over several different appearances by the defendant. *See Johnson*, 355 Md. at 461, 735 A.2d 1003. Appellant's reliance on these cases is misplaced because both cases can be easily distinguished.

While appellant argues that the facts of this case are similar to those in *Johnson*, one key distinction makes the rules from *Johnson* inapplicable. That distinction is that Johnson's offenses brought him within the exclusive jurisdiction of the circuit court, such that Johnson never appeared in district court without counsel and demanded a jury trial, but instead merely appeared before a district court commissioner and then a district court judge for a bail review hearing. *Id.* at 453, 735 A.2d 1003. The *Johnson* Court's holding that the advisements given to the defendant by the district court commissioner and judge did not satisfy the requirements of

---

4. Rule 4–215(a)(4) requires the court to conduct a waiver inquiry pursuant to subsection (b) if the defendant indicates a desire to waive counsel. Because appellant never indicated such a desire, the court was relieved of satisfying subsection (a)(4).

subsection (a) relied primarily on its finding that the circuit court had exclusive jurisdiction.

To the contrary, the charge against appellant, pursuant to section 36 of article 27 of the Maryland Code, and based on appellant's alleged concealment of a dangerous or deadly weapon, falls within the concurrent jurisdiction of the district and circuit courts. Md.Code, art. 27 § 36 (1957, 1996 Repl. Vol., 2001 Supp.). Despite the fact that the district court ordinarily has exclusive jurisdiction over criminal cases where the defendant is charged with a statutory misdemeanor, *see* Md.Code, Cts. & Jud. Proc. § 4–301(a)(1) (2002 Repl.Vol.), section 4–302 of the Courts and Judicial Proceedings article provides that concurrent jurisdiction exists where the penalty may be confinement for 3 years or more. *See* Md.Code, Cts. & Jud. Proc. § 4–302(d)(1)(i). Section 36 explains that being found guilty of concealing a dangerous or deadly weapon is a misdemeanor that carries with it a possible sentence of no more than three years, bringing it within the statutory definition of those crimes where the district and circuit courts have concurrent jurisdiction.

When appellant initially appeared before a district court judge, he did so pursuant to the district court's jurisdiction over the crime he was charged with, and his case was only transferred to the circuit court based on his demand for a jury trial. *See* Md.Code, Cts. & Jud. Proc. § 4–302(e)(2)(i) (explaining that a defendant is not entitled to a jury trial unless the penalty for the offense with which the defendant has been charged permits imprisonment for a period in excess of 90 days). Unlike the defendant in *Johnson,* therefore, appellant did appear before the district court without counsel, entered a prayer for a jury trial, and was given the litany of subsection (a) advisements. Based on this important distinction, the principles espoused in *Johnson* cannot be applied to the present case.

■ Appellant's reliance on the statement in *Evans v. State,* 84 Md.App. 573, 581, 581 A.2d 435 (1990), that "compliance by a judicial officer at a district court initial appearance

is not a substitute for the circuit court's compliance with Maryland Rule 4–215(a)," is also misplaced. Less than a year after we decided *Evans,* in the case of *Smith v. State,* 88 Md.App. 32, 591 A.2d 902 (1991), we applied a similar holding to that in *Evans,* but recognized that:

> [O]ur holding in this case will have a limited application. On May 9, 1991, the Court of Appeals adopted a new version of Rule 4–215. This Rule will become effective July 1, 1991. The amendments require the District Court to comply with Rule 4–215(a) when a defendant appears before that court without counsel and demands a jury trial. The amendments also permit a circuit court judge to rely on the advice of the right to counsel previously given to a defendant by a District Court judge when the defendant requests a jury trial.

*Id.* at 43, 591 A.2d 902. Our statement in *Smith* reflects the current understanding that Rule 4–215(a) can be complied with by advisements given to a defendant by a district court judge when the defendant appears in district court without counsel and prays for a jury trial, as appellant did in the present case. *See also Moore v. State,* 331 Md. 179, 184, 626 A.2d 968 (1993) (The petitioner does not argue that the court did not comply with Rule 4–215(a); he concedes that, by virtue of a 1991 amendment, the circuit court does not have to comply with that section so long as the record reflects that a District Court judge has already done so."); *Felder v. State,* 106 Md.App. 642, 648, 666 A.2d 872 (1995) ("The [subsection (a) ] prerequisites had been satisfied, because the appellant 1) had received a copy of the charging document and 2) had earlier appeared before a District Court judge [] and had been given the required advice.").

Ultimately, we are satisfied that the record sufficiently demonstrates fulfillment of the subsection (a) requirements because (1) appellant appeared in district court without counsel and prayed for a jury trial, (2) appellant's offenses did not make his case fall within the exclusive original jurisdiction of the circuit court, and (3) the district court record demon-

strates that appellant was advised of the entire subsection (a) litany.

Having determined that the trial court did not err in finding that the requirements of Rule 4–215(a) were satisfied, we turn to appellant's second claim of error. Assuming satisfaction of subsection (a), appellant argues that the court did not provide appellant an opportunity to offer an explanation for his appearance without counsel on the day of his trial in order to determine if there was a meritorious reason pursuant to Rule 4–215(d). Specifically, appellant alleges that on the morning of trial, appellant offered an explanation for his appearance without counsel, and that the record reflects that the trial court made no further inquiry nor considered the reasons that appellant offered before concluding that appellant effectively waived his right to counsel. On the other hand, the State argues that the record reflects the trial court's consideration of appellant's failure to secure representation, which it argues supports its finding that appellant did not have a meritorious reason, justifying its requiring appellant to proceed *pro se.*

In *Moore v. State,* 331 Md. 179, 626 A.2d 968 (1993), the Court of Appeals explained that "[r]ule 4–215(d) requires the court to first permit a defendant to explain why he or she appeared without counsel and, second, to determine whether, considering that explanation, the defendant has a meritorious reason for appearing without counsel." *Id.* at 185, 626 A.2d 968 (citing *Maus v. State,* 311 Md. 85, 532 A.2d 1066 (1987)). The Court further explained that the Rule is mandatory, and that failure to comply with its mandate results in reversal of appellant's conviction. *Id.* (citing *Williams v. State,* 321 Md. 266, 582 A.2d 803 (1990)).

While the provision's mandate seems straightforward, applying it to a specific set of facts has presented a challenge for many courts because there is no prescribed or set form of inquiry required. In most cases, the appellant and the State rely on the same language from the transcript, but disagree as to whether the exchange between the court and the defendant reflects compliance with the rule. In determining whether the

defendant's reason is meritorious, the court's inquiry (1) must be sufficient to permit it to exercise its discretion, *see Moore,* 331 Md. at 187, 626 A.2d 968, (2) must not ignore information relevant to whether the defendant's inaction constitutes waiver, *see id.,* and (3) must reflect that the court actually considered the defendant's reasons for appearing without counsel before making a decision. *See Gray v. State,* 338 Md. 106, 111, 656 A.2d 766 (1995).

In both *Moore* and *Gray,* the Court of Appeals held that the trial court erred in finding that the defendant waived his right to counsel by inaction. In *Moore,* when the defendant appeared before the circuit court for trial without counsel, the court questioned the defendant about the absence of counsel. *Moore,* 331 Md. at 185, 626 A.2d 968. The defendant began to explain that he had counsel, had been unable to finish paying him, but had just started to work recently. *Id.* at 185–86, 626 A.2d 968. The court interrupted the defendant's explanation, and without further inquiry, determined that he waived his right to counsel and would have to proceed *pro se. Id.* The Court of Appeals held that the trial court's actions violated Rule 4–215(d), explaining that:

> This record reveals the existence of information relevant to the petitioner's reason for appearing without counsel. Without further inquiry, however, it could not be determined whether those reasons were meritorious. Rather than pursue such an inquiry, which was clearly suggested by the circumstances, the court in effect ignored the relevant information offered by the petitioner in favor of maintaining its position that "we can't postpone these cases or continue these cases indefinitely for you to obtain counsel."

> [] The fact that a defendant has not finished paying his or her lawyer, without more, may not be a meritorious reason for appearing without counsel. When, however, that defendant's recent employment is added to the mix, it may be. An inquiry may reveal that the defendant delayed in seeking employment or some other reason for concluding otherwise. Similarly, although the proffer that a defendant sought the assistance of the public defender when it became

obvious that he or she could not pay private counsel but was refused representation is consistent with a meritorious reason for appearing without counsel, inquiry into the circumstances might reveal that it is not.

While the rule does not require the conduct of an inquiry in any particular form, this does not mean that the court may ignore information relevant to whether the petitioner's inaction constitutes waiver; the court is not relieved of the obligation to make such inquiry as is required to permit it to exercise discretion required by the rule.

*Id.* at 186–87, 626 A.2d 968.

Similarly, in *Gray,* when the defendant appeared for trial without counsel, the judge questioned the defendant, who explained that he had missed the deadline for the Public Defender's Office because he had been trying to get money together to hire a private attorney, but was unable to. *Gray,* 338 Md. at 112–13, 656 A.2d 766. Despite the fact that the court gave the defendant ample opportunity to explain his reason for failing to obtain counsel before determining that the reason given was not meritorious and that the defendant would have to proceed to trial *pro se,* the Court of Appeals reversed Moore's conviction, finding that the defendant's explanation was plausible, and therefore, as a matter of law, not non-meritorious. *Id.* at 113, 656 A.2d 766. The Court further explained that the trial court's failure to perform further inquiry about the defendant's "facially meritorious" explanation rendered its waiver determination invalid. *Id.* at 114, 656 A.2d 766.

█ Unlike the defendants in *Moore* and *Gray,* appellant did not provide the trial court with any specific reason for the absence of counsel, but instead merely asked the court to assign him counsel, claiming that his attempts to contact the Public Defender's Office had been unsuccessful. He did not mention any efforts to obtain private counsel, nor did he suggest to the court that his financial circumstances had recently changed. His statement concerning his attempts to

call and visit the Public Defender's Office indicated no reason why the judge should inquire further.

In fact, Judge Rollins, who determined that appellant effectively waived counsel on the morning of trial, was the same judge who had given appellant a postponement when he discharged his public defender on July 5, 2001. The court's statements demonstrate its familiarity with appellant's repeated discharges of counsel and appearances without counsel and its careful consideration of appellant's reason for appearing without counsel on the morning of trial. On more than one occasion, appellant was given a postponement and was advised of the importance of counsel and told that, if he appeared again without counsel, he could be deemed to have waived his right and required to proceed *pro se.* Aware of that possibility, appellant provided the court with no specific reason justifying his appearance without counsel, and thus, no further inquiry by the court was necessary in order to comply with subsection (d). As previously stated, in light of our decision with respect to the first issue, we need not decide whether the waiver inquiry was sufficient. However, we see no basis for concluding that the court erred in finding that appellant waived his right to counsel by inaction.

On remand, if the case is retried, appellant will have another opportunity to secure the representation of counsel for his new trial. If he appears with counsel, the waiver issue becomes moot. If he appears without counsel again, the trial court will be required to comply with Rule 4–215(b), (d), or (e), depending on the circumstances. We have reviewed the applicable law, however, for the guidance of the court on remand.

3

Next, appellant contends that the trial court committed plain error by permitting the State's inflammatory and mischaracterizing closing argument. Specifically, appellant challenges the following portions of the prosecutor's closing argument:

Okay. Mr. McCracken is a very intelligent man in my opinion. He, like your accountant, you go to the accountant

and you find loopholes.... That's what Mr. McCracken did in this particular case. He went ahead and found a loophole, an alleged loophole, what he thinks is a loophole to go out and carry this particular weapon because he's correct, you don't need a permit to go out and purchase this particular weapon, okay, because the handgun statute has boom, boom, boom, boom, boom, boom, lots and lots of requirements that you need, but this particular thing as defined by the judge is an antique firearm.

. . .

You folks are basically the lynch pin in this whole picture in his loophole, and that loop, in my opinion, turns into a noose with you folks here today because I don't think any of us think that it is reasonable to carry a loaded weapon into a local bank, whether it's any bank where there are civilians and other people working. And it is completely and entirely unreasonable, which is why Mr. McCracken is guilty of carrying and concealing a dangerous weapon in this particular case.

... But, you know, I think Mr. McCracken has been relatively honest here today and I think in his mind that what he is doing, I think he's somewhat deviant in finding that loophole.

Appellant also argues that the prosecutor's reference to the pre-*Miranda* statements, admitted as rebuttal evidence during closing, reflects an improper attempt to use the statements as substantive evidence of appellant's intent even though they were only admissible for impeachment purposes. Essentially, appellant argues that these improper arguments exceeded the limit of permissible comment by the prosecutor and constitute plain error requiring reversal of appellant's conviction.

The State, in response, argues that we should decline to review the prosecutor's comments during closing argument because appellant raised no objection to the comments at trial, and thus, the claim is not preserved. As to the merits, the State contends that, given the wide latitude that counsel is afforded in presenting closing arguments to the jury, the

prosecutor's comments were not improper, and that even if they were, they did not satisfy the high standard required for reversal based on plain error.

In *Williams v. State*, 137 Md.App. 444, 768 A.2d 761 (2001), we recognized that "[c]losing argument 'is a robust forensic forum wherein its practitioners are afforded a wide range of expression.' " *Id.* at 455, 768 A.2d 761 (quoting *Davis v. State*, 93 Md.App. 89, 124, 611 A.2d 1008 (1992)); *see also Degren v. State*, 352 Md. 400, 429, 722 A.2d 887 (1999) (stating that "attorneys are afforded great leeway in presenting closing arguments to the jury"). In *Degren*, the Court of Appeals further explained that " '[t]he prosecutor is allowed liberal freedom of speech and may make any comment that is warranted by the evidence or inferences reasonably drawn therefrom.' " *Id.* at 429–30, 722 A.2d 887 (quoting *Jones v. State*, 310 Md. 569, 580, 530 A.2d 743 (1987)).

■ In *Williams*, we also recognized that there are some limitations to counsel's freedom of expression, stating that:

"Despite the wide latitude afforded attorneys in closing arguments, there are limits in place to protect a defendant's right to a fair trial." *Degren*, 352 Md. at 430, 722 A.2d 887; *see Wilhelm v. State*, 272 Md. 404, 413–15, 326 A.2d 707 (1974). Nonetheless, not every improper comment requires reversal. *Degren*, 352 Md. at 430, 722 A.2d 887; *Hunt v. State*, 321 Md. 387, 435, 583 A.2d 218 (1990). Reversal is warranted only if " 'it appears that the remarks of the prosecutor actually misled or influenced the jury to the prejudice of the accused.' " *Degren*, 352 Md. at 431, 722 A.2d 887 (quoting *Jones*, 310 Md. at 580, 530 A.2d 743). This determination rests largely in the control and discretion of the presiding judge, and an appellate court should not reverse the trial court unless there has been an " 'abuse of discretion by the trial judge of a character likely to have injured the complaining party.' " *Henry v. State*, 324 Md. 204, 231, 596 A.2d 1024 (1991), *cert. denied*, 503 U.S. 972, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992) (quoting *Wilhelm*, 272 Md. at 413, 326 A.2d 707)(italics in original)).

*Williams,* 137 Md.App. at 456–57, 768 A.2d 761. In addition, when the defendant fails to object and move for a mistrial, an improper closing argument by the State is grounds for reversal by an appellate court if it constitutes plain error. *See United States v. DePew,* 932 F.2d 324, 327–28 (4th Cir.1991); *Rubin v. State,* 325 Md. 552, 587–88, 602 A.2d 677 (1992). In *United States v. Harrison,* 716 F.2d 1050 (4th Cir.1983), the United States Court of Appeals for the Fourth Circuit outlined four factors to be considered in determining whether improper prosecutorial comment constitutes plain error requiring reversal. *Id.* at 1052 (outlining the following four factors: (1) the degree to which the remarks had a tendency to mislead the jury and prejudice the defendant; (2) whether the remarks were isolated or expansive; (3) the strength of the competent evidence to establish guilt absent the remarks; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters).

Relying on the *Harrison* factors, appellant argues that the prosecutor's characterization of him as a "deviant" out to violate Maryland's handgun laws, which appellant claims constituted a substantial portion of the closing argument, would strongly tend to mislead the jury into drawing conclusions about his motives and intentions that were not supported by the trial evidence. Additionally, appellant argues generally that the evidence of his guilt was "underwhelming," such that the prosecutor's comments could have easily been a significant cause of appellant's conviction. Finally, appellant alleges that the prosecutor's comments directed the jury's attention to extraneous matters and away from the relevant evidence adduced at trial. Based on all of this, appellant claims that the trial court committed plain error in failing, *sua sponte,* to take corrective action or to declare a mistrial.

The State argues that the prosecutor's comments were not improper given the fact that on direct examination, appellant testified that he did "legal research" before purchasing the gun, and on cross-examination, stated that his purpose for doing the research was to find a gun that he could purchase without a permit. This evidence, the State suggests, fully

supports the prosecutor's comments implying that appellant was looking for loopholes in Maryland's weapons statutes. In addition, the State claims that, even if the remarks were improper, they were not of the character to warrant plain error review. *See Rubin v. State,* 325 Md. 552, 588, 602 A.2d 677 (1992) (explaining that "[t]he unobjected-to, improper argument in the case before us does not rise to the level of the deprivation of a fair trial).

First, we will not address appellant's argument related to the prosecutor's reference to the impeachment testimony during closing because presumably, on remand, if the issue arises, the court will provide a limiting instruction to ensure that the jury knows that such impeachment evidence can only be considered in determining credibility, rather than guilt. As for appellant's challenge to the prosecutor's characterization of him as a "deviant," while we recognize that we are permitted to review appellant's claim under plain error review, we choose not to because we have no reason to believe that the prosecutor who tries the case on remand will use the same language again. We caution, however, against the use of epithets and other terms calculated to inflame the jury during closing arguments. *See Walker v. State,* 121 Md.App. 364, 380–81, 709 A.2d 177 (1998) (holding that the prosecutor exceeded the bounds of proper comment by characterizing the defendant as an "animal" and "pervert").

4

Appellant's fourth claim alleges that the trial court erred by failing to exercise its discretion, pursuant to Maryland Rule 4–265, to waive the time requirements for appellant to request the issuance of subpoenas.

On the morning of trial, appellant made a motion for the issuance of subpoenas. At first, appellant commented to the court that he believed he needed an attorney to be able to issue subpoenas, but after explaining that appellant could do it himself, the court rejected appellant's request, stating:

Mr. McCracken, you're supposed to do that ahead of the case. We don't issue subpoenas on the day of the case.

You're supposed to do that in preparation for trial. It's a little too late now to come in and say you want to subpoena somebody in when the case is actually going to start in a few minutes.... So my ruling is that you're too little too late on the subpoenas.

Appellant argues that the trial court did not properly exercise its discretion pursuant to Maryland Rule 4–265(a) but instead applied a blanket rule. The State responds by arguing that the issue was not preserved for appellate review and, additionally, that the record demonstrates that the court did exercise its discretion. The State further contends that the fact that appellant has not offered any information as to what witnesses were at issue or how they would have assisted his case supports the court's rejection of appellant's motion because it was tantamount to asking for another postponement.

Maryland Rule 4–265, governing the issuance of subpoena for trial, provides, in pertinent part, that "[u]nless the court waives the time requirements of this section, the request shall be filed at least nine days before trial in circuit court...." Although it is clear that appellant's request made on the morning of trial did not meet the nine-day deadline, appellant argues that the court was permitted to exercise its discretion by waiving the time requirements. Appellant further argues that the court's statements suggest that it failed to exercise any discretion, merely applying a blanket rule and that such failure constitutes an abuse of discretion. While the State agrees with appellant that "when a trial court has discretion to act, it must exercise that discretion," see State v. Rodriguez, 125 Md.App. 428, 445, 725 A.2d 635 (quoting Colter v. State, 297 Md. 423, 426, 466 A.2d 1286 (1983)), it contends that the record demonstrates that the court did so in this case. It further asserts that, absent an indication to the contrary, judges are presumed to have properly applied the law. See, e.g., Whittlesey v. State, 340 Md. 30, 48, 665 A.2d 223 (1995); Howard v. State, 112 Md.App. 148, 160, 684 A.2d 491 (1996).

▮ Because the case will be remanded for a new trial, we need not consider whether the court erred in denying appel-

lant's motion on the morning of trial, as he will be given another chance to request the issuance of subpoenas without needing to ask the court to waive the rule's time requirements. We note, however, that a court's denial of a request to waive the time requirement, made on the day of trial, absent a demonstrated ability to serve and produce witnesses within the expected trial time, will not ordinarily constitute an abuse of discretion. A ruling to the contrary would be tantamount to a continuance, and the requirements for a continuance would have to be satisfied.

5

Finally, appellant argues that the trial court erred in denying appellant's motion for judgment of acquittal.

At the close of the State's case, appellant moved for a judgment of acquittal, arguing that the State failed to prove concealment of a dangerous or deadly weapon. The court denied the motion. Following the court's denial, appellant presented evidence in his defense, and he did not renew the motion for judgment of acquittal at the close of all of the evidence.

As a preliminary issue, the State argues that appellant's challenge to the sufficiency of the evidence is unpreserved for appellate review because appellant failed to renew his motion for judgment of acquittal after presenting his own evidence. We agree with the State that, when a defendant moves for judgment of acquittal at the close of the State's case-in-chief, but fails to renew the motion at the close of all of the evidence, a challenge to the sufficiency of the evidence is not properly before the appellate court. *See Williams v. State*, 131 Md.App. 1, 6, 748 A.2d 1 (2000) (relying for support on Maryland Rule 4–324(c), which provides that "[a] defendant who moves for judgment of acquittal at the close of evidence offered by the State may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion."). Even

though the claim is not preserved for appellate review, we will address appellant's arguments briefly.

The test for evidentiary sufficiency on appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997) (quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). In making such a determination, the reviewing court must give "due regard to the [fact finder's] finding of facts, its resolution of conflicting evidence and, significantly, its opportunity to observe and assess the credibility of witnesses." *McDonald v. State,* 347 Md. 452, 474, 701 A.2d 675 (1997) (quoting *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994)).

The jury convicted appellant of violating article 27, section 36, governing the carrying of concealed weapons, which provided in pertinent part:

(a) *In General,*—Every person who shall wear or carry any ... dangerous or deadly weapon of any kind, whatsoever about his person ... shall be guilty of a misdemeanor. ...

(f) *Exceptions.*—Nothing in this section shall be construed to prevent the carrying of any of the weapons mentioned in subsection [](a) by: ...

(4) Any person who shall carry such weapon as a reasonable precaution against apprehended danger, but the tribunal before which any case arising under the provisions of this section may be tried, shall have the right to judge of the reasonableness of the carrying of any such weapon, and the proper occasion therefor, under the evidence in the case.

Md.Code, art. 27 § 36 (1957, 1996 Repl.Vol., 2001 Supp.).

Applying the standard of review to the present case, appellant argues that the evidence failed to establish that the weapon (1) qualified as a dangerous or deadly weapon, or (2) was concealed. Specifically, he contends that the evidence

was legally insufficient to permit the fact finder to conclude beyond a reasonable doubt that (1) appellant was carrying the pistol for use as a weapon, (2) the weapon was loaded at the time of appellant's arrest, (3) appellant understood the pistol to be loaded at the time, and (4) appellant was concealing the weapon. Based on these alleged insufficiencies, appellant claims that reversal is mandated.

Appellant correctly points out that a pistol is not among the type of weapons designated by section 36 as dangerous or deadly *per se*. Appellant and the State both acknowledge, however, that the trier of fact is permitted to determine whether the instrument constitutes a "dangerous or deadly weapon," based on the circumstances. *See Anderson v. State,* 328 Md. 426, 438, 614 A.2d 963 (1992). In *Anderson,* the Court of Appeals explained that such a determination requires a finding, based on all of the circumstances, that the person had "at least the general intent to carry the instrument for its use as a weapon, either of offense or defense." *Id.* Whether a defendant possessed the requisite intent is a question of fact to be determined by the jury. *Id.*

To support his claim that the evidence did not support a finding that he possessed the requisite intent, appellant points primarily to the explanations and testimony that he offered while on the stand. Weighing the credibility of witnesses and resolving conflicts in the evidence are tasks for the jurors, such that they may choose to believe testimony in part, in total, or not at all. *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323 (1998). Accordingly, the jury was not required to credit appellant's testimony that he was merely returning from the shooting range with the gun when he carried it into the bank, that the gun was not ready to be fired, in the sense of having all components in place, or that he did not believe the weapon was ready to be fired at the time of his arrest. In fact, appellant's suggestion that he was not carrying the gun as a weapon is inconsistent with his own testimony that he purchased it and carried it for self-protection. We are satisfied that there was sufficient evidence for the jury to conclude

that appellant intended to carry the gun as a weapon in order to satisfy the statutory requirement.

Similarly, appellant's challenge to the sufficiency of the evidence of concealment is likewise unsuccessful. In *Shipley v. State*, 243 Md. 262, 220 A.2d 585 (1966), the Court of Appeals set forth the standard by which to determine whether a weapon is concealed within the meaning of section 36, stating:

> By a recognized test a weapon is concealed if it is so situated as not to be discernible by ordinary observation by those near enough to see it if it were not concealed who would come into contact with the possessor in the usual associations of life, but absolute invisibility is not required; since ordinary observation does not extend to a search unusually careful, thorough or detailed, made because of suspicion that contraband which is not visible by ordinary observation may in actuality be present.

*Id.* at 269, 220 A.2d 585.

Appellant argues that the evidence is insufficient to support a finding of concealment because the holster and butt of the pistol were clearly visible to several bank employees and because there was no evidence that appellant made any attempt to conceal it. The State, however, points out that (1) the police were initially called to the bank because an employee had observed a suspicious bulge under appellant's coat, (2) one of the bank employees testified that she became suspicious of appellant because he was wearing a coat even though it was warm day, (3) the same bank employee was only able to observe the end of the gun when she asked appellant to have a seat in the lobby and the front of his coat came open, and (4) another bank employee testified that she was only able to see the butt of the gun when appellant reached into his coat to retrieve identification. Based on all of the testimony highlighted by the State, we believe that there was sufficient evidence from which the jury could have concluded that gun was concealed in appellant's jacket.

Consequently, we hold that, after viewing the evidence in the light most favorable to the prosecution, the jury could have found the essential elements of the crime beyond a reasonable doubt. *See Taylor v. State,* 346 Md. 452, 457, 697 A.2d 462 (1997).

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY CECIL COUNTY.**